EUGENE F. GILBERT *vs.* GEORGE K. GUILD & another.

Suffolk.   March 18. — June 29, 1887.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

If a boy nineteen years of age undertakes to work on a dangerous machine, understanding the danger, and is injured, his employer is not liable therefor, although the machine would not have been dangerous, had guards been used.

In an action by an employee against his employer for injuries sustained while the plaintiff was at work on a machine which sheared the nap from cloth by revolving knives, an expert for the plaintiff was permitted to testify that it would not be safe to put the hand upon the cloth in a certain position near the knives when the machine was running at a certain speed. He was then asked whether this danger would be obvious to an inexperienced operative. This question was excluded. *Held,* that the plaintiff had no ground of exception.

TORT for personal injuries sustained by the plaintiff, while in the defendants' employ, through the alleged negligence of the defendants. Trial in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show the following facts :

The plaintiff was nineteen years and two months old at the time of the accident; he was injured while in the employ of the defendants at their woollen mills in Newport, New Hampshire, on October 18, 1883. At the time of this injury, he was employed on a "Parks and Wilson's Improved Rotary Shearing Machine." The object of this machine is to shear the nap off woollen cloth. The cloth passes close to a stationary knife plate, over against which is a rotating cylinder, on which are eighteen knife blades, over which there was no guard; the nap

projects between the knife plate and the blades, and is sheared off as the cloth passes by. As the cloth comes up from the floor, it passes over a rod, and then over and under various rollers, and then over a brush. From the time when it passes over the rod to the time when it passes over the brush, it is covered up so as not to be easily reached. After leaving the brush, it passes over an open space five inches wide, and then over a smooth iron plate seven inches wide, and then under the knives. There was testimony on both sides, which was uncontradicted, that the cloth moves about two feet in three seconds; that the proper place to guide the cloth and smooth out the wrinkles is at certain points where the cloth passes over the rod; and that, if a wrinkle should come on the plate, the proper thing to do is to throw back the rotating cylinder, and allow the cloth to pass through uncut, or to stop the machine. The plate was about five feet wide; and the cloth on which the plaintiff was working was three feet wide.

The plaintiff testified that he was first engaged by the defendants on September 15, 1883, having never before worked in mills of any kind; that he was employed in tying up cloth, and in various departments, before he was put at this machine, and had been employed at this machine about two weeks in all, off and on, at the time of his injury; and this testimony was not contradicted. He also testified that he was instructed by the defendants' superintendent, who was foreman of his room, to guide the cloth with his left hand between the iron plate and the brush, and keep it smooth at one or the other of certain points in the open space of five inches above referred to, and, in case of wrinkles, to take them out with his right hand on the roller, and that he was told to look out for the knives; that he was told to look out and not put his fingers under the shears; that he told the superintendent he would look out, and that that was all the warning of danger which he received; and that he knew that one Thompson cut the first joint of his finger off with the machine before this accident. On cross-examination, he testified that he did not know that his hand would be drawn in by the moving cloth; and that he had no idea it would go up with the cloth. The defendants introduced evidence contradicting the plaintiff as to the instructions given.

The plaintiff further testified, that, at the time of the accident, while standing at the left-hand side of the machine, he saw a fold coming under one of the rollers; that he at once walked across to the right-hand end of the machine; that while guiding the cloth over the iron plate, with his left hand raised above his head, he attempted to pull out the fold on the roller above referred to under the machine with his right hand, and that, while looking down at his right hand and at the roller under the machine, his left hand was drawn into the knives and two of the fingers cut off; that his right hand was three and a half feet from his left hand; that, though he knew the knives were dangerous, the special danger of his hand being drawn in by the rapidly moving cloth did not occur to him. The knives were open to view, and had no guard of any kind, and the plaintiff testified that he saw them; that to put his fingers against the knives from the front of the machine he had to extend his arm about its full length; and that the knives were about the level of his chin.

The plaintiff then introduced evidence as to the proper manner of using the machine (which the defendants' witnesses confirmed), and as to the danger of using it in the manner in which the plaintiff testified he was instructed to use it.

Charles Carr, who had been a mechanical engineer for twenty-five years, and a builder of machines for over thirty years, and had seen these machines in operation, then testified that it was not safe to put the hand on the iron plate with the cloth travelling at the rate of a foot a second.

The plaintiff then proposed to ask him the following question: "State whether or not, in your opinion, the danger of the operative's hand being drawn under the knives, if placed upon the cloth, or in the neighborhood of the plate, to smooth out a wrinkle or to guide the cloth, is a danger which would be obvious to an inexperienced operative." This question was excluded.

The plaintiff then proposed to ask the witness if he had ever seen guards on these machines. This question was also excluded.

The plaintiff then proposed to ask the witness his opinion as an expert, as to whether guards should be used on these machines. This question was also excluded.

The plaintiff then proposed to ask the witness if these machines came from the manufactory provided with guards, to be used or not, as the owners of the machines might choose. This question was also excluded, but the judge stated that he did not rule beyond this exact question, namely, whether these machines as manufactured are supplied with guards covering the knives; that if there was any evidence that this machine was supplied with a guard which the defendants took off, that would be another kind of fact; and that he did not understand that the plaintiff offered any such testimony.

The jury returned a verdict for the defendants ; and the plaintiff alleged exceptions.

*J. C. Ropes & W. L. Putnam*, for the plaintiff.

*G. O. Shattuck & W. A. Munroe*, for the defendants.

W. ALLEN, J. The ground of the plaintiff's right of action was that he was injured in performing dangerous work that he was put to do by the defendants. The machine was dangerous only because there was danger in working upon it; and, if it was in fact dangerous, it was immaterial that the danger might have been averted by appliances protecting against it. The defendants are not liable to the plaintiff because they used a dangerous machine, but because they employed the plaintiff to use it in ignorance of the danger. If the plaintiff undertook the work knowing the danger, the defendants are not liable, although they might have prevented the danger by guarding against it; if the plaintiff did not know of the danger, proof that the defendants could not have guarded against it would be no defence. The verdict shows that the question whether the defendants were negligent in not having a guard upon the machine was not in the case. If it was founded upon the fact that the machine was not dangerous, or on the fact that the plaintiff had knowledge of the danger, it was equally immaterial that the defendants had not provided a guard. Want of due care by the plaintiff, or knowledge of the danger by him, which the jury must have found if they found the machine to be dangerous, would have prevented a recovery, equally whether the defendants could or could not have guarded against the danger. See *Ladd v. New Bedford Railroad*, 119 Mass. 412, and cases cited ; *Pingree v. Leyland*, 135 Mass. 398 ; *Coombs v. New Bedford Cordage Co.*

102 Mass. 572; *Sullivan* v. *India Manuf. Co.* 113 Mass. 396; *Taylor* v. *Carew Manuf. Co.* 140 Mass. 150; *Rock* v. *Indian Orchard Mills*, 142 Mass. 522; *Linch* v. *Sagamore Manuf. Co.* 143 Mass. 206.

The exceptions are to the exclusion of questions put to an expert. Three of the questions related to the use of a guard, an immaterial matter, and were properly excluded. The defendants were liable on account of the actual danger, and not from the fact that they might have prevented it.

The only other question, the exclusion of which was excepted to, related to the material matter of the knowledge by the plaintiff of the danger. The danger was from revolving knife blades. The machine was used to cut the nap from woollen cloth. By the action of the machine, the cloth was drawn between various rollers and then under the revolving blades, and the plaintiff's duty was to guide the cloth in passing through the machine, and to smooth out wrinkles and folds in it with his hands. The danger of using the hands near unguarded revolving blades was apparent. The plaintiff contends that he was exposed to a peculiar and hidden danger, from the effect of the tractile power of the cloth in drawing a hand resting upon it under the knives. The witness testified as an expert, in regard to this, that it would not be safe to put the hand upon the cloth in a certain position near the knives when the cloth was moving at a certain rate. He was then asked whether the danger of the operative's hand being drawn under the knives, if placed upon the cloth, would be obvious to an inexperienced operative; and the question was excluded. In learning what the danger was, the jury may have been aided by the opinion of those who had special knowledge in regard to it; but, having found that, the question whether it was obvious to the common mind, or required a special education and experience to see and appreciate it, was addressed to the common knowledge of the jury, and not to the special knowledge of an expert. We think the questions were all properly excluded.                    *Exceptions overruled.*