TIMOTHY SHINE *vs.* COCHECO MANUFACTURING COMPANY.

Suffolk. January 10, 1899. — June 30, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Negligence — Action.*

An intelligent boy seventeen years old, who is set to work on a machine through which cloth in the process of manufacture passes, whose duty it is to see that the cloth goes smoothly and to smooth it out when the edge is turned over on the

way to the machine, and who, having worked on the machine for several weeks, understands the danger of getting his hands drawn into the machine, and knows that if they are drawn in they will get burned, and knows also that the cloth which passes through the machine is made up of different pieces, and that frequently there are tears in it of various sizes and shapes, cannot maintain an action against his employer for injuries caused by having his hand caught in a hole in a seam where two pieces of cloth are stitched together, and drawn into the machine and burned, on the ground that the defendant was negligent in failing to instruct him that there were liable to be such holes in the cloth, he having testified that he had not seen any holes in the cloth, although witnesses called by him said that they were of frequent occurrence.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ, by the alleged negligence of the defendant in setting him to work without warning or instructing him of the dangers incident to his employment. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The defendant was engaged in the manufacture of cloth in Dover, New Hampshire, and the plaintiff at the time of the accident was in charge of a machine called a "drier," the purpose of which was to dry out the cloth in a certain stage of its manufacture. This cloth was in pieces about a yard wide, and from fifty to one hundred yards or more in length. In the course of manufacture these pieces were stitched or sewed together by workmen in other rooms of the mill before the cloth came into the room where the plaintiff was at work, and the pieces of cloth so fastened together made a continuous strip or belt of cloth, which passed through various rooms and stages of manufacture and was drawn up through a slit in the floor into the room where was placed the drier which the plaintiff had in charge. This drier consisted of a series of large copper cylinders or cans placed above one another on alternate sides of upright beams, and were kept filled with steam. The cloth was drawn from the slit in the floor over these cylinders in succession, and thus was dried out. Immediately at the slit in the floor was a small wooden roller, over which the cloth passed and from which it went into an "expander," so called. This expander consisted of a roller about sixteen inches in diameter which was raised nearly two feet from the floor, and was about three feet and a half toward the drier from the slit in the floor, and was not operated by any independent power, but only by the traction of

the cloth passing over it. The purpose of the expander was to stretch the cloth to its full width, and to keep it smooth as it went into the drier, and the surface of this roller was arranged to accomplish this. The drier was placed about two feet from the expander, on the side away from the slit in the floor. The distance from the top of the expander to the point at which the cloth went into the drier over a small wooden roller was about twenty inches, and the distance between this wooden roller and the surface of the first can of steam in the drier was about two inches.

The plaintiff's duty was to see that the cloth went into the machine smoothly, and to smooth it out when its edge was turned over on its way to the drier, to assist in joining together the ends of the strip or belt of cloth whenever it came apart, and to see that the cans in the drier were kept heated to the proper temperature.

While the plaintiff was smoothing out a turned edge on the cloth between the expander and the drier, at about half past four o'clock in the afternoon of February 14, 1895, his hand was caught in a hole in a seam where two pieces of cloth were stitched together, and was carried in between the first can of the drier and the small wooden roller at that point, and was there held against the can of steam, and he received the injuries complained of.

The plaintiff testified that he came to this country in May, 1894, being then about sixteen years of age; that he was born in Ireland, and had lived at home with his parents until he came to this country, having gone to school from the earliest time he could remember up to within twelve months of leaving home; that he came to this country with the idea of bettering his condition, as a result of a letter received from a friend who was working in the defendant's mill; that on arriving in this country he proceeded at once to Dover, where he remained four or five weeks before he obtained any employment; that he then went to work in a soap factory, where he had to attend four or five kettles, mixing the materials in the kettles and seeing that they were properly heated and melted, and then ladling the soap out when ready; that he continued thus at work about four or five months, after which he was without work from three to five

weeks, and then obtained employment in the packing room of the defendant; that he worked in the packing room for about two months, and then after about a week he went to work in the drying room on the machine in question; that this was about the first week in January; that there were five or six drying machines in the room, and seven or eight employees; that after passing through the drying machines the cloth goes through a hole in the ceiling of the drying room and passes on to other stages of manufacture; that the cloth passed through in the form of a continuous band of various kinds of cloth, sometimes thinner and sometimes thicker, sometimes white, and sometimes colored or printed cloth; that the different pieces of cloth were sewed together in some room before they came into the drying room, and made a series of pieces of cloth stitched together forming a belt; that he was put to work by one Finucane, who told him where to go to work; that he worked on the machine about four weeks before being injured; that his business was to take out double edges, which were where the edge of the cloth had become turned over; that, in addition to looking out for the double edges, he also looked out for some cloth coming over a roller hanging from the ceiling and going into packing cases, the packing work being about fifteen or twenty feet from the drier; that he also had to attend to turning on the steam into the cylinders to dry the cloth, which was done by means of a valve alongside the machine; that Finucane told him about turning on the steam; that he also told him to take out the double edges, and when a piece of cloth would break in two how to get a string and tie both ends together; that no one else beside Finucane gave him any instruction about the machine; that he had seen the cloth coming through the machine, sometimes torn part way across and sometimes torn wholly across from the margin; that he had never seen any holes in the cloth, and did not know that there were liable to be holes in the middle of the cloth; and that where he was working it was "kind of dark," owing to the side of the machine on which he was working being turned from the window.

On cross-examination, the plaintiff testified that the cloth sometimes tore apart and was sewn together again; that there were tears of various kinds and sizes frequently coming in the

cloth; that when the cloth got torn completely across in his room he would tie a string to one end and give the string to the man in the room below to tie to the other end ; that sometimes the seams opened and got mended before they got up into his room, and if there was a bad case and a tear right across, and they saw it in time, they would stop the machine before it came to him and tie it themselves ; that if it happened away from his room, the other workmen would sew it together again ; that all through the factory, whenever a piece of cloth got torn across, or anything like that, the men in the room where it happened to be hitched it together again, and then started it on, except that they could not sew wet cloth ; that it was a frequent occurrence to have pieces sewed together, and it was always done by other workmen ; that it was not unusual to have tears of various sizes of the cloth, but that he had never seen one in a seam ; that he knew the tendency of this machine was to draw everything into it ; that he knew that the drawing of the cloth turned the expander, that anything hitched on to the cloth was going into the machine, and that if his hands got inside by the wooden roller they were going in ; that he was looking out for fear he would get his hands into the rollers ; that he understood if he got them in there he would get burned ; that he understood if he got them close to the edge of the roller they were apt to go in, if he was not looking out ; that there was a power drawing things in from that point; and that he was trying to keep his hand from getting over there.

Joseph Marcotte, a witness called by the plaintiff, testified that he had worked on this same drier for about six months, some time before the plaintiff took charge of it ; and that during that time he had noticed holes and tears in the cloth coming through, the holes being sometimes on the edge of the cloth, sometimes in the middle, and sometimes in the seams.

Thomas Fanucane, a witness called by the plaintiff, testified that he had worked on this machine, having had charge of it for about six months before the plaintiff took it ; that he got the plaintiff his job and put him to work; that during the six months he ran the machine there were lots of tears in the cloth that went through ; that he would see tears almost every day ; that he had seen it torn clear across so as to separate it, and

then they would string it together again ; that the different pieces of cloth that went through were sewn together by a sewing machine ; that he would see holes as the cloth went through, quite often in the kind of cloth in question ; that if a seam was not sewn back from the selvage it would pull through sometimes and there would be a hole, and, besides that, there were holes in the body of the cloth ; that he had seen them all the time more or less during the six months; and that sometimes there would be a few days or a week when there would not be many holes, and then a few days when there would be a good many.

On cross-examination, he testified that at the time of the accident the plaintiff was on the side of the machine away from the window; that he was not in his own light at all ; that all the light there was from the window was straight on the place where he was working ; that, so far as the witness could see, there was no difficulty at that time in seeing plainly all about the machine and the cloth, and everything there was there, so far as light was concerned; that he was around the machine more or less at the time when the plaintiff was working on it; that he could always see the seams while the plaintiff was working on it ; that there would be holes in the cloth sometimes ; that one could see these holes before they got to the expander ; and that, if there was a hole in a seam, if one was looking closely he could see it before it got to the expander.

At the close of the evidence for the plaintiff, the judge ruled that the action could not be maintained ; and directed the jury to return a verdict for the defendant.   The plaintiff alleged exceptions.

*F. J. Daggett & G. P. Wardner*, for the plaintiff.

*H. E. Warner*, for the defendant.

MORTON, J.   The negligence complained of was the failure of the defendant to instruct the plaintiff that there were liable to be holes in the cloth in which his hand might get caught and drawn into the machine.   At the time of the accident the plaintiff was about seventeen years old, and seems to have been of more than usual enterprise and intelligence.   He had worked on the machine where he was injured five or six weeks, and understood the danger of getting his hands drawn in, and knew that if they were drawn in they would be burned.   He knew also

that the cloth which passed through the machine was made up of different pieces, and that there frequently were tears in it of various sizes and shapes. He testified that he had not seen any holes in the cloth, though witnesses introduced by him said that they were of quite frequent occurrence. We do not think that the defendant was bound to tell the plaintiff that there might be holes in the cloth as well as tears. The fact that there were liable to be tears was enough to show that there were liable to be holes also. If the plaintiff needed no instruction as to the danger arising from the presence of tears in the cloth, it is difficult to imagine any reason except an extremely refined one for saying that he needed any instruction as to the danger arising from the presence of holes in the cloth.

*Exceptions overruled.*