[No. 4554.   Decided August 4, 1904.]

STELLA BIER, *Respondent, v.* A. A. HOSFORD *et al., Appellants.*[1]

MASTER AND SERVANT—NEGLIGENCE—ASSUMPTION OF RISK—APPARENT DANGER FROM UNGUARDED MANGLE IN LAUNDRY. In an action for personal injuries sustained by an operator of a five roll mangle in a laundry, by reason of the alleged removal of a guard, whereby plaintiff's hand was caught between the rolls, the plaintiff assumes the risks or is guilty of contributory negligence as a matter of law, where it appears that she is an intelligent woman of the age of 25 years, had been working on the machine in question as a feeder for three months, and it was obvious that she would suffer injury if she allowed her hands to be caught while running clothes through the machine, and she fully appreciated the danger, and·it is error to refuse to grant a nonsuit.

SAME—OBEYING INSTRUCTIONS. A servant is not justified, in the presence of apparent danger, in putting life or limb in jeopardy by rushing the work unreasonably in obedience to orders of a fellow-servant, who was in charge of the work.

1Reported in 77 Pac. 867.

SAME—PLEADING—ASSUMPTION OF RISKS—NONSUIT.   While as-
sumption of risks is an affirmative defense which must be pleaded,
still, when it appears by the plaintiff's evidence that he cannot
recover in any event by reason thereof, defendant is entitled to
a nonsuit.

Appeal from a judgment of the superior court for Spo-
kane county, Richardson, J., entered July 10, 1902, upon
the verdict of a jury rendered in favor of the plaintiff for
$2,100 for injuries sustained by the operator of a mangle
in a laundry.   Reversed.

*Post, Avery & Higgins,* for appellants.

*Shine & Winfree and W. F. Townsend,* for respondent.

PER CURIAM.—Action brought in the superior court
of Spokane county, by plaintiff, Stella Bier, against A. A.
Hosford, J. T. O'Brien, and J. Anthony Smith, co-
partners doing business under the firm name and style
of "Washington Steam Laundry," defendants, to recover
damages for personal injuries.   Verdict was rendered and
judgment entered in plaintiff's favor for $2,100, and de-
fendants appeal.

It is alleged in the complaint, that the defendants
negligently and wilfully permitted a five roll mangle,
owned and operated by them, to be run and operated with-
out its guard, and ordered plaintiff to work around and
upon, and to adjust the clothing for, and to feed the
clothing to, the said mangle, which was unsafe and insecure
and unprotected by any of the ordinary guards usually
maintained upon such mangles, and the said defendants
wilfully removed the guard from the said five roll mangle,
with a careless disregard for the safety of others, and
greatly increased the danger of working in and around
said mangle, which danger, if the said guard had been
allowed to remain upon the said mangle, would have been

35-35 WASH.

very slight, or none at all; that, in order that the said mangle should receive and turn out more work, the said defendants strained and forced their servants and this plaintiff to increased activity in a place carelessly and wilfully made unsafe by the defendants; that said guard was removed from the said mangle by defendants prior to the time plaintiff commenced work at said laundry, and she was not informed, and did not know, that part of said machine was missing, and she had no knowledge of machinery, and said mangle was so constructed that she could not have seen, and did not see, any danger connected therewith; that the said defendants well knew the dangerous condition of said mangle, and of the risks incident to the work required upon and around, and in feeding, said mangle, and this plaintiff had no knowledge or means of knowledge thereof; that defendants had full knowledge and notice of plaintiff's ignorance thereof, and did not warn said plaintiff, nor impart said knowledge to her. It is also alleged in the complaint that on November 27, 1901, the plaintiff, without fault of her own, had her right hand caught under the first roller of said mangle, and the same was severely crushed between said roller and the heated concave iron underneath, and that said hand was also severely burned.

Appellants by their answer deny the material allegations of the complaint, except that a portion of respondent's hand was caught in the mangle, but they deny any knowledge or information sufficient to form a belief regarding the extent of such injuries. For an affirmative defense, it is alleged, that the respondent was, at the time of the accident, and for a long time prior thereto, thoroughly familiar with the machine operated by her; that she had been advised of the dangers incident to the operation thereof;

that such dangers were apparent and obvious, which she thoroughly knew and understood; that she assumed whatever risk there was connected with the operation of said mangle; that, at the time of the accident, she was operating such mangle in a careless and negligent manner; and that said accident was caused by her own negligence. The reply denies the affirmative matter alleged in the answer.

At the conclusion of the evidence adduced in respondent's behalf at the trial, appellants moved in the lower court that this case be taken from the jury, and that judgment be rendered herein in their favor. The assignment of error predicated upon this ruling of the trial court presents the pivotal question in this controversy.

The record shows that the trial of this action began in the lower court on June 18, 1902. Respondent testified, that she was then twenty-five years of age; that in the latter part of June, 1901, she commenced to work for appellants at their steam laundry as an ironer; that a month or so thereafter she went to work as one of the feeders on the mangle described in her complaint; that she had worked in a laundry about one year, but that this was her first experience in working on mangles. This mangle was installed in the Washington Steam Laundry between five and six years prior to the trial. James Thierry, a former part owner in this laundry, and a witness for respondent, testified that a guard came with this mangle.

"Q. Describe that guard to the jury. A. That guard is a piece of iron about eight feet six inches long, and is bent at an angle, and square, and one side of it is four inches, and the other side is about an inch, or an inch and a quarter; I could not say exactly."

He testified further that this guard was intended to be placed between the operator and the first roller, that he thought the machine,

" . . . would be just as safe without the guard as
with the guard, and be easier to work on the mangle. Q. If
that guard were on could a person put his fingers into the
rollers? A. . . . I could not say if they would put
them in with the guard or not. . . . There probably
was three quarters of an inch between the plate and the
guard—that is, from the plate to the guard.    Q. How
far was that guard placed in front of the first roller? A.
That top of the guard comes close on the roller, and
the bottom of it would be probably between an inch and a
half and two inches from the roller."

The five metal rollers or cylinders, comprising a portion
of this mangle, were a trifle over eight inches in diameter.
When in operation, these cylinders, enwrapped in blankets
with an outside covering of cotton fabric, revolved toward
the feeders, and approached the concave iron underneath
sufficiently close to catch the clothes fed into the machine
and carry them through. The cylinders were visible.
Whether the concave iron was partly or completely hidden
from view while the mangle was in operation does not defi-
nitely appear from the testimony. The respondent, how-
ever, admitted that she knew of this hot iron. She testi-
fied, "I thought it was necessary to have an iron to iron the
sheets." The concave iron was bare. These cylinders
and this iron were hot when the machine was in operation.
If the fingers should come in contact with the cylinders, the
covering thereon would prevent them from getting burned.
Between the persons feeding and the foremost cylinder was
a sheet iron apron, attached to the machine, on which the
goods were placed, then straightened out, and the wrinkles
removed therefrom. The feeders stretched the goods out
upon this apron, and held them in position till caught by
the moving cylinder and carried over the concave iron.
The purpose of this guard, when placed between the feed-

ers and front cylinder, was to prevent the hands of the feeders from coming in contact therewith.

Between seven and eight o'clock on the morning of November 27, 1901, one Mrs. Dick and respondent were feeding this mangle, respondent taking her position at the right and Mrs. Dick at the left, in front of the machine. Mrs. Gladden was forewoman of the laundry at the time. Respondent testifies, that Mrs. Dick had charge of this mangle at that time; that respondent received her orders from Mrs. Dick; that the laundry at that date was overcrowded with work, and that she (respondent) was then under "hurry up" orders from Mrs. Dick to push the work; that there was no guard on this mangle at the time she was injured; that she did not know there was any place for a guard on such machine, or that a guard came with the mangle; that while she was engaged in feeding the mangle, she "did not see any danger;" that she did not know there was any danger in feeding without a guard.    On respondent's further direct examination, she testified in response to questions propounded to her as follows:

"Q.    What were you feeding to the mangle at the time before this accident?   A.    I was feeding a round cloth; it was made of canvas, and there was a hole in the middle, and a cord drawn around the edge, and I was feeding that through, and in some way my hand got caught in the cord and was jerked through.   Q.    This round cloth you describe, Miss Bier, what is it used for if you know; have you heard since then?   A.    I think for gambling tables.   Q. The cloth that you describe had a hole in the middle, a small hole?   A.    Yes, for chips.    Q.    To drop chips through?   A.    I think that is what it is for.    .    .    . Q.    Was this cord you speak of loose or tied?   A.    It was tied, gathered up.    Q.    What material did you say that cloth was made of?   A.    Made of something heavy; I think it was canvas.    .    .    .    Q.    Is it harder or easier to feed that cloth to the mangle or a plain, ordinary spread

or sheet? A. I think it is harder to feed a cloth of that kind. . . . Q. I will ask you now, in placing that cloth into the mangle and trying to keep it straight, to explain to the jury if you can how your hand got caught, as you are testifying? A. I don't know how it got caught, it went in so quick. Q. Where did your hand go to? A. It went inside, under the upper first roller."

On cross examination respondent testified concerning this cord: "I believe it was tied or it would not have drawn up," and further, that she did not see either of the proprietors at the laundry that morning, prior to the accident.

In *Walker v. McNeill,* 17 Wash. 590, 50 Pac. 521, which was an action to recover compensation for personal injuries, the following language appears in the opinion of the court:

"It has already been determined that contributory negligence is a defense to be pleaded and proven in this state. We view assumption of the risk of employment as of kindred nature. The better authorities seem to favor this rule; and it is certainly on principle the natural and orderly method of pleading and proof."

This language would seem to imply that contributory negligence and assumption of risks of employment are matters of defense, and must be separately pleaded. This court held that it would not consider the question of assumption of risks in the above cause on appeal, because that proposition was not urged and presented in the trial court. In *Ball v. Gussenhoven* (Mont.), 74 Pac. 873, the court says that, "The defenses of contributory negligence and assumption of risk are entirely inconsistent with each other, and do not rest upon the same principles; and the existence of one necessarily excludes the existence of the other;" citing, Bailey, Master & Serv., § 938 *et seq.; Miner v. Connecticut etc. R. Co.,* 153 Mass. 398, 26 N. E. 994; *Texas & Pac. R. Co. v. Bryant,* 8 Tex. Civ. App. 134, 27 S. W. 825;

*Mundle v. Hill Mfg. Co.*, 86 Me. 400, 30 Atl. 16. While
these defenses may rest upon different principles, still we
are not prepared to hold unqualifiedly that "the existence
of one necessarily excludes the existence of the other." In
the opinions of the ablest courts and jurists there may be
found language which is proper and accurate, as applied
to the facts of the particular controversy under considera-
tion, but is warped from its obvious meaning when applied
in a different connection, or to a dissimilar state of facts.
True, the text books and reports contain many cases where-
in the servant suffering injuries was careful in the line
of his employment, but yet the rule that the employe as-
sumed the risks of such employment was applied. Each
controversy must necessarily depend in a great measure on
its own particular facts.

The case of *Greef v. Brown*, 7 Kan. App. 394, 51 Pac.
926, was an action brought by a Miss Brown against Greef
Bros. to recover for injuries sustained while she was work-
ing at a mangle in a laundry. Her hand was caught be-
tween the cylinders and burned. "A guard board, de-
signed by the manufacturer of the machine to protect oper-
ators, was in the building, but had not been used. Of
this guard board, and its use, defendant in error was whol-
ly ignorant." The servant when injured was nearly sev-
enteen years of age. The accident happened on the second
day of her employment at the mangle. The court, com-
menting on the facts, observed:

"She could not fail to see and understand the danger,
for the reason that all the elements of it were wide open be-
fore her. The very thing happened which she knew was
most likely to occur if she allowed her fingers to get be-
tween the cylinders, and no warning or caution could have
increased her knowledge of the danger or the necessity for
care. She therefore assumed the risk (*Luebke v. Berlin
Machine Works*, 88 Wis. 442, 60 N. W. Rep. 711 [43 Am.
St. 913,]) and was guilty of contributory negligence; for

the assumption of risk is a species of contributory negligence.    This being true, it could make no difference even if plaintiffs in error had neglected reasonable precaution."

We therefore think, under the facts presented by this record, that the doctrines of contributory negligence and assumption of risk are closely related.    See, also, *Luebke v. Berlin Machine Works, supra;* Black's Law & Prac. in Accident Cases, § 333.

"There are many classes of cases in which the courts have defined and fixed the standard of duty both in its application to the defendant and to the plaintiff.    In such cases, where the facts are undisputed or the inferences to be drawn from them are certain, the court should decide the question of plaintiff's contributory negligence as a matter of law.  As a general principle, it is only where the circumstances of the case are such that the standard and measure of duty are fixed and defined by law, and are the same under all circumstances; or where the facts are undisputed, and but one reasonable inference can be drawn from them, that the court can interpose and declare, as matter of law, that there is such contributory negligence, as will defeat the action of the plaintiff.    As a general proposition, a question of negligence is a question of fact, and must be submitted to the jury."    Black's Law & Prac. in Accident Cases, § 279.

See, also, *Christianson v. Pacific Bridge Co.,* 27 Wash. 582, 68 Pac. 191, and authorities cited; Remington's Notes on Wash. Rep. p. 218.

"Where an employe knows, or in the reasonable exercise of his faculties, should know, the dangers which surround him, he must be held to have assumed the risk." *McDannald v. Washington etc. R. Co.,* 31 Wash. 585, 72 Pac. 481.

In *Danuser v. Seller & Co.,* 24 Wash. 567, 64 Pac. 783, Judge Dunbar uses the following language:

"It is well established that the employer must furnish the employee with a safe place to work, but it is just as

well established that the employee assumes the risk of apparent peril."

Where the danger is obvious and apparent, and the servant is ordered by the master to work in a given place, he cannot recover if injured.    It is the servant's duty to disobey orders of that nature.    *Christianson v. Pacific Bridge Co., supra.*    In *Crooker v. Pacific Lounge etc. Co.,* 34 Wash. 191, 75 Pac. 632, cited by respondent's counsel, an instruction given by the trial court expressed in the following language was sustained by this court on appeal:

"A general rule of law is that a person working with a defective or unguarded machine, and without complaint, and knowing of the dangers of the same, assumes the danger of the defect or unguarded part; but there is no longer any doubt that, where an operator of machinery has expressly promised to repair a defect, the workman does not assume the risk of an injury caused thereby, within such a period of time after the promise as would be reasonably allowed for its performance; nor, indeed, is any express promise or assurance from the master necessary.    It is sufficient that the workman may reasonably infer that the matter will be attended to.    So you are instructed that if the plaintiff, at the time of his employment and at the time of the accident, saw the danger from the lack of the guard, and complained of the same to the foreman, and the foreman promised to put on a guard, and the plaintiff went to work, and continued at work, on the promise, and you further find that the danger was not so imminent and immediate that a reasonably prudent man would not go to work or continue at work on the saw, and that at the time of the accident the plaintiff was relying upon the foreman's promise to place on a guard, then you are instructed that the plaintiff did not assume the risk and danger of an injury resulting from the lack of a guard."

In the case at bar it is not pretended that appellants ever promised to place any guard upon this mangle, or that respondent ever complained in that regard.    She testified

that she did not know that there was any place for a guard on this mangle. Whatever dangers there were in operating the machine in question were apparent and obvious, known, or should have been known, by this respondent as well as by the appellants. Again, in the *Crooker* case there was evidence tending to show that the plaintiff was exercising due care when he received the injuries of which he complained. The evidence in the action at bar discloses that the respondent is an intelligent woman, and was twenty-five years of age at the time of the accident; that she had been working on this mangle as a feeder about three months prior to the accident, which was a sufficient length of time to enable her to understand fully and appreciate the danger surrounding it. It was apparent and obvious that, if, while running clothes through the machine, she should allow her hand or fingers to get caught between the nearest revolving cylinder and the hot concave iron underneath, she would suffer an injury. The bare statement of this proposition is sufficient to demonstrate its verity, notwithstanding respondent's statement that she was not aware of such danger. Physical facts, apparent to individuals of the most ordinary understanding, particularly those things capable of sensation and touch, cannot be overcome or discredited by word of mouth. Courts and juries in such instances are not warranted in making erroneous deductions from known premises. *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178. Moreover, we think, aside from this statement of respondent, taking her testimony in its entirety with reference to the nature of her employment, and her description of this mangle and its movement while in operation, that she sufficiently understood and appreciated the risks and dangers to which she was constantly exposed while at work thereon without any guard being attached to this machine. Within the rule of law enunciated

in *Christianson v. Pacific Bridge Co., supra,* respondent was not obliged, in the presence of apparent and obvious danger, to obey the alleged directions of Mrs. Dick, her fellow-servant and companion feeder at the mangle, to rush the work unreasonably, thereby putting' life and limb in jeopardy. It would seem that, even if respondent was rushed with her work as she claimed, this fact ought not to have prevented her, in the absence of any guard, from controlling her hand and fingers and watching the movements of the rollers, thus obviating this unfortunate accident. *Truntle v. North Star Woolen-Mill Co.,* 57 Minn. 52, 58 N. W. 832.

We are of the opinion that the facts appearing in the record bring this action within the reasoning of *Oleson v. McMurray Cedar Lumber Co.,* 9 Wash. 502, 37 Pac. 679, wherein this court held that a person employed to work about dangerous machinery assumes the risk of all dangers which are obvious, and cannot recover for injuries sustained, although the master failed to instruct the servant regarding his duties connected with the operation of such machinery, and the danger of his employment in that behalf. This salutary doctrine enunciated in the *Oleson* case has been reaffirmed by several subsequent decisions of this court. Remington's Notes on Wash. Rep., p. 258.

"The machine was dangerous only because there was danger in working upon it; and if it was in fact dangerous, it was immaterial that the danger might have been averted by appliances protecting against it. . . . If the plaintiff undertook the work knowing the danger, the defendants are not liable, although they might have prevented the danger by guarding against it." *Gilbert v. Guild,* 144 Mass. 601, 12 N. E. 368.

Again, the same learned court in *Connolly v. Eldredge,* 160 Mass. 570, 36 N. E. 469, uses this significant language:

"The danger to fingers from two cylinders in contact with each other, and seen to be revolving inwardly, is obvious to any person of ordinary powers, and plainly was understood by the plaintiff. *Crowley v. Pacific Mills,* 148 Mass. 228 [19 N. E. 344]. In *Patnode v. Warren Cotton Mills,* 157 Mass. 283, 289 [32 N. E. 161, 34 Am. St. 275], it might have been found that the plaintiff could not see the revolving rolls by which he was hurt. In the present case, if there had been no guard across the shelf of the mangle, the plaintiff would have acted at her peril. But the guard did not convert the mangle into a trap. It manifestly was not intended to protect the hand except in the ordinary use of the mangle, when clothes were slid under the guard. The plaintiff was putting a cloth upon the cylinder, above the guard. She saw, or might have seen, all the elements of danger, including the distance between the guard and the cylinder on that side. To appreciate them required no warning or instruction beyond what is furnished by common experience."

It is true, as respondent's counsel contend, that this court has frequently affirmed the proposition of law that contributory negligence and assumption of risks are matters of defense, which must be alleged and proven like other defenses. Still, when it plainly appears, from the respondent's evidence introduced at the trial, that she cannot recover, in any event, by reason of her contributory negligence, the court cannot ignore the presentation of the facts appearing in the record, which become a part of the case for all purposes, whether in support of the main action or of one or more of the grounds of defense. In several of our own decisions, cited above, the doctrine of assumed risks was recognized and applied on defendant's motion for a nonsuit. See, *Brown v. Tabor Mill Co.,* 22 Wash. 317, 60 Pac. 1126.

Photographs of this mangle from different positions were introduced in evidence by appellants, to which re-

spondent's counsel refer as silent witnesses in their client's behalf. We are not prepared to say, from inspection of these several views, that the concave iron above noted was partially or wholly invisible. Still, this inspection would seem to strengthen our conclusion that, if respondent had simply exercised ordinary prudence and caution in feeding that particular cloth into this machine, her fingers would not have been caught in the manner of which she complains. The counsel for respondent assert in their printed argument that, "It is also true, that respondent's hand became entangled in a peculiar combination of goods which were tendered her for passage through the mangle." We have read the testimony appearing in the statement of facts very carefully, especially that portion adduced in respondent's behalf, and fail to discover the reason for such contention. We assume that counsel refer to the cloth used as a covering for a gambling table, with a hole in the center thereof, through which chips may be dropped. The evidence fails to show that the feeding of such cloths through the mangle is attended with any extraordinary danger. These coverings came into the laundry the same as other goods, were run through the mangle, and then ironed out smoothly. In view of the testimony of respondent to the effect that she did not know how her hand got caught, it went in so quickly, we fail to see the bearing of the evidence regarding this particular covering cloth, on the issues involved in the present controversy. *Shine v. Cocheco Mfg. Co.,* 173 Mass. 558, 54 N. E. 245. On the facts appearing in the record, we are of the opinion that the appellants' motion for a nonsuit should have been granted.

The judgment of the superior court is therefore reversed, and this cause is remanded, with directions to dismiss the action.