[No. 6126. Decided July 17, 1906.]

Etta Kranich, *Appellant,* v. O. B. Knapp, *Respondent.*[1]

Master and Servant—Negligence—Dangerous Machinery—Assumption of Risk. An employee assisting in feeding a laundry mangle, whose hand was caught between the rollers over the guard while smoothing wrinkles in a sheet, assumes the risk, where the dangers were open and apparent and she could not fail to see the danger, even though she had assisted in feeding only five or six times, had received no warning, and testified that she did not know of the danger or how the accident happened.

Appeal from a judgment of the superior court for King county, Morris, J., entered November 18, 1905, in favor of the defendant, granting a nonsuit at the close of plaintiff's case, in an action for personal injuries sustained by the operator of a mangle in a laundry. Affirmed.

*James McNeny,* for appellant.

*Walker & Munn,* for respondent.

Rudkin, J.—This action was brought to recover damages for personal injuries suffered by the plaintiff while feeding a mangle in a laundry owned and operated by the defendant. The plaintiff commenced work at the laundry on the 25th day of February, 1903, and the accident complained of happened on the 13th day of March, 1903. Between the time the plaintiff commenced work and the time of the accident, her general occupation was ironing, and shaking out the clothes preparatory to running them through the mangle. She thus describes the manner in which she received her injuries:

"Q. Did you go up there to the mangle? A. Yes, sir. Q. Did you commence to iron? What did you do when you first went up there? A. I shook out. Q. How long did you shake out? A. Oh, I don't know; about fifteen or twenty minutes. Q. Then what did you do? A. I helped Etta feed the sheets. Q. What did you do in the course of feeding the

[1]Reported in 86 Pac. 207.

sheet into the mangle; what did she do and what did you do? A. I took hold of one end of the sheet, and she took hold of the other end, and straightened out the edges, and shoved it into the mangle. Q. How long had you worked before the accident? A. Well, I don't remember. It must have been five minutes or so. Q. About five minutes or so? A. Yes, sir. Q. Describe to the jury as near as you can how that accident took place. A. I don't know. I went to straighten the wrinkles out of a sheet, and before I realized, my hand was in the mangle. That is all I know. Q. Had you worked on the mangle before? A. Well, yes, I stepped up there a few times—stepped up there a few times to put in a sheet with Etta. Q. How many times do you think? A. Not more than five or six times, anyhow. Q. Did you work for any particular length of time at any of those times? A. No, sir. Just stepped up and put in a spread. Q. Had you received any instructions from anybody as to how to operate the mangle? A. Well, I was shown how to push the clothes in the mangle. Q. Who showed you that? A. Etta. Q. That is to push in? A. Yes, sir. Q. Did Mr. Knapp ever give any instructions? A. No, sir. Q. Did Etta give you any other instruction except that? A. No, sir. Q. And when did she tell you about that? A. Well, the first time I went up to the mangle to feed. Q. Did she tell you anything about the danger of getting your hand above the guard? A. No, sir."

At the close of the plaintiff's case the court directed a nonsuit, and from the judgment of nonsuit this appeal is prosecuted.

The mangle which caused the injury was in all respects similar to the mangles described by this court in *Bier v. Hosford,* 35 Wash. 544, 77 Pac. 867, and *Daffron v. Majestic Laundry Co.,* 41 Wash. 65, 82 Pac. 1089. In the *Bier* case there was no guard of any kind on the mangle; in the *Daffron* case the guard "was round and about an inch or two in diameter and so placed as to revolve when the hand passed along over it," while in the case at bar the guard was about two inches square. The allegations of negligence were: (1) Setting the appellant at work in a dangerous place without proper instructions, she being without experience; (2)

maintaining a defective belt shifter for stopping the mangle; (3) maintaining a defective and insufficient guard; and (4) that the padding on one of the rollers of the mangle was unevenly and negligently placed. It seems to be conceded that the court below acted largely on the authority of *Bier v. Hosford, supra,* in granting the nonsuit. The appellant contends that the *Bier* case is not controlling here, for the reason that there was no guard on the mangle involved in that case, and for the further reason that the plaintiff in that case had worked at the mangle for some three months before receiving her injury.

The distinction pointed out does no doubt exist, but were the facts which give rise to the distinction controlling factors in the decision of the *Bier* case? When we consider the reasons assigned for the decision, and more especially the authorities cited in its support, we are constrained to hold that they were not. In the *Bier* case this court quoted in its entirety the opinion of Mr. Justice Holmes in *Connolly v. Eldridge,* 160 Mass. 566, 36 N. E. 469. The facts in that case were almost identical with the facts in this case. There was the same mangle, the same guard, the same lack of experience, the same lack of instruction, and the injury happened in substantially the same way. Counsel for appellant seeks to distinguish this case from the case cited by reason of the fact that, in the case cited, the plaintiff was assisting in putting a new cloth on the upper roller of the mangle when her hand passed into the mangle over the guard, whereas, in this case, the appellant was assisting in feeding the mangle, and while smoothing the wrinkles in the cloth on the cylinder, her hand slipped into the mangle over the guard. This distinction is shadowy to say the least. The decision in the Massachusetts case was based upon the ground that the plaintiff "saw, or might have seen, all the elements of danger, including the distance between the guard and the cylinder on that side. To appreciate them required no warning or instructions beyond what is furnished by common experi-

ence." There is no distinction between the cases, unless the
party assisting in putting a new cloth on the cylinder had a
better opportunity to observe the distance between the guard
and the cylinder than had the party smoothing wrinkles out
of the cloth on the cylinder with the back of the hand. The
appellant had her hand above the guard when injured, and
was necessarily less than an arm's length from the guard and
cylinder. It would seem, therefore, that the appellant's op-
portunity for seeing and appreciating the danger was fully
equal to that of the plaintiff in the case cited.

In the *Bier* case this court also cited and quoted from
*Greef v. Brown,* 7 Kan. App. 394, 51 Pac. 926. In that case
the plaintiff was a minor. There was the same lack of experi-
ence and the same lack of instruction. The only distinguish-
ing feature between the two cases was the absence of a guard
in the former. The court based its decision upon the ground
that the plaintiff,

"  .   .   . could not fail to see and undersand the dan-
ger, for the reason that all the elements of the same were
wide open before her. The very thing happened which she
knew was most likely to occur if she allowed her fingers to get
between the cylinders, and no warning or caution could have
increased her knowledge of the danger or the necessity for
care."

In the case of *Jones v. Roberts,* 57 Ill. App. 56, the plain-
tiff was a minor.

"It appeared from her own testimony that she was in her
sixteenth year, and had been working in the laundry about
two weeks when she was injured. She had worked about ten
days receiving the goods as they came through the cylinders,
and for three or four days before she was hurt, had been
engaged in feeding or putting them into the rolls or cylinders.
Her hand was caught while she was smoothing out the
wrinkles in a pillow slip which was passing through the rolls.
How or why it was caught she did not know. She testified
that she knew the iron cylinder was hot and if she got her
hand in there it would surely be burned; that she knew if she
got her hand between the rolls it would be badly hurt. She

described the mangle and the manner in which it was to be operated, and stated that she was cautioned when she began to work on the feeding side to be careful, but insisted that she was not informed that the machine was dangerous, or told that her hand might be caught and hurt between the rolls. The trial judge at the close of the evidence on her behalf directed the jury to return a verdict for the defendant. This ruling was, we think, correct. The jury could not, without acting unreasonably, in the eye of the law, decide that she did not fully appreciate and realize the danger that necessarily attended the prosecution of the work in which she was engaged, or that her injury occurred because she had not been properly advised as to the means of avoiding it. The only means of avoiding the danger was to be careful that the hands did not come in contact with the rolls, and of this she could not have been ignorant. The evidence, with all the inferences which could justifiably be drawn from it, was insufficient to support a verdict in her behalf."

The latter case is not cited in the *Bier* case. The appellant cited the case of *Coleman v. Perry,* 28 Mont. 1, 72 Pac. 42. In that case the opinion states that there was testimony tending to show, among other things, that the mangle in use was out of repair and in a dangerous condition, that the rolls were not operating evenly, that it was necessary for the person feeding it to pass the left hand nearer the rolls than the right hand in order to get the fabrics through, and that all these facts were unknown to the plaintiff. The nature of the defects in the machinery, whether open or hidden, or the proximate cause of the injury, the opinion does not disclose and for that reason the case has no direct bearing on the question before us. In the *Bier* case this court used the following language:

*"Whatever dangers there were in operating the machine in question were apparent and obvious, known, or should have been known, by this respondent as well as by the appellants.* Again, in the *Crooker* case there was evidence tending to show that the plaintiff was exercising due care when he received the injury of which he complained.

"The evidence in the action at bar discloses that the re-

spondent is an intelligent woman, and was twenty-five years of age at the time of the accident; that she had been working on this mangle as a feeder about three months prior to the accident, which was a sufficient length of time to enable her to understand fully and appreciate the danger surrounding it. *It was apparent and obvious that, if, while running clothes through the machine she should allow her hand or fingers to get caught between the nearest revolving cylinder and the hot concave iron underneath, she would suffer an injury. The bare statement of this proposition is sufficient to demonstrate its verity, notwithstanding respondent's statement that she was not aware of such danger. Physical facts, apparent to individuals of the most ordinary understanding, particularly those things capable of sensation and touch, cannot be overcome or discredited by word of mouth. Courts and juries in such instances are not warranted in making erroneous deductions from known premises.*"

Regardless of any slight difference in the facts, we are therefore of opinion that *Bier v. Hosford, supra,* and the other cases cited are sustained by, and find their support in, the reason assigned by the court of appeals of Kansas in *Greef v. Brown,* viz.,

"She could not fail to see and understand the danger, for the reason that all the elements of it were wide open before her. The very thing happened which she knew was most likely to occur if she allowed her fingers to get between the cylinders, and no warning or caution could have increased her knowledge of the danger or the necessity for care. She therefore assumed the risk . . . and was guilty of contributory negligence; for the assumption of risk is a species of contributory negligence. This being true, it could make no difference even if plaintiffs in error had neglected reasonable precaution;"

and that the same principle is controlling here.

The judgment of nonsuit is therefore affirmed.

MOUNT, C. J., FULLERTON, HADLEY, CROW, DUNBAR, and ROOT, JJ., concur.