## WILLIAMS v. BUNKER HILL & SULLIVAN MINING & CONCENTRATING CO.

(Circuit Court, E. D. Washington, E. D.    August 3, 1911.)

### No. 1,474.

MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMED RISK.

Plaintiff, an employé of a mining company, was injured by coming in contact with a trolley wire heavily charged with electricity. Plaintiff was in full possession of all of his faculties, and was intelligent and experienced. He had worked in the mine for five months, and had daily ridden in and out of the mine on a train, and could see the exposed trol-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ley wire within a few inches of his eyes, and could have known that it was not guarded or protected, and that it conducted sufficient electricity to propel a train of some 10 or 12 cars. In plaintiff's daily walks through the dark tunnels, the wire in many places came down as low as his shoulder within a few inches of his head, and he consistently avoided contact with the wire under such conditions, and saw his fellow workmen take the same precautions. He testified that he knew, if he came in contact with the wire, he would get hurt, but did not know there was enough power to harm him. *Held*, that he assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574-600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

At Law. Action by Thomas Williams against the Bunker Hill & Sullivan Mining & Concentrating Company. On motion for judgment non obstante. Granted.

Belden & Losey, B. K. Wheeler, and Maury & Templeman, for plaintiff.

Myron A. Folsom, for defendant.

RUDKIN, District Judge. The plaintiff in this action is a subject of the king of Great Britain and Ireland, and the defendant a corporation organized and existing under the laws of the state of Oregon. On the 10th day of July, 1910, the plaintiff was injured, while in the employ of the defendant, through coming in contact with a trolley wire maintained and used by the defendant for the purpose of propelling cars in and out of its mine near the town of Kellogg, in the state of Idaho. A motion for nonsuit was interposed at the close of the plaintiff's testimony, and a motion for a directed verdict at the close of all the testimony; but these motions were denied, the court reserving the right to reconsider the questions thus presented on motion for judgment notwithstanding the verdict, in the event the jury should return a verdict in favor of the plaintiff. This practice is sanctioned by the local laws of the state of Washington. Roe v. Standard Furniture Co., 41 Wash. 546, 83 Pac. 1109; Quackenbush v. City of Yankton, 186 Fed. 991. Such a course was deemed in the interest of society and in the interest of the parties, to the end that a final judgment may be ordered on the verdict by the appellate court, should this court err in the conclusion it is about to reach.

The negligence charged in the complaint consisted in a failure on the part of the defendant to insulate the trolley wire, or to guard or protect it, and a failure to warn the plaintiff against the danger of coming in contact with a trolley wire charged with electricity—a danger of which he is alleged to have been wholly ignorant. Of course, the trolley wire could not have been insulated without wholly destroying its functions; but for the purposes of this case it will be conceded that the defendant was negligent in other respects, and that the plaintiff was wanting in contributory negligence. The motion for a judgment notwithstanding the verdict is interposed on the sole ground that the plaintiff assumed the risk, and this is the only question I deem it

necessary to discuss or consider. The rule is well established that every servant assumes certain risks incident to his employment, and the application of that rule to the facts of this case is all that remains. As said by the court in Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281:

"One who understands and appreciates the permanent conditions of machinery, premises, and the like, and the danger which arises therefrom, or by the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injuries. Upon that state of facts the law declares that he assumes the risk. The rule is too well settled to warrant an extensive discussion of it, or an attempt to analyze the different reasons upon which it has been held to be justified. The rule of assumption of risk has been thought by many a hard one, when applied to the complicated conditions of modern industry, so largely conducted by the aid of machinery propelled by irresistible and merciless mechanical power, and the criticism frequently has been made that the imperative need of employment leaves to the workman no real freedom of choice, such as the rule assumes. That these considerations have had an influence is shown by the notorious unwillingness of juries to apply the rule, and by the legislative modifications of it which, from time to time, have been made, as, for instance, by Congress in the safety appliance law. * * * But the common law in this regard has not been modified in the District of Columbia, and we have no other duty than to enforce it."

Again the court said:

"Where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employé must be held, as matter of law, to understand, appreciate, and assume the risk of it. * * * The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly."

In Maki v. Union Pac. Coal Co. (C. C. A.) 187 Fed. 389, the court said:

"The second contention of the plaintiff's counsel is that the defendant's failure to fence off the machinery was negligence in itself, that a servant does not assume the risk of his master's negligence, and that, therefore, the plaintiff was entitled to a verdict. The answer is that, while it is true that the servant does not assume the risk of his master's negligence, the effect of which is neither known to him nor readily observable, nor to be apprehended, yet he does, by continuing in the employment without complaint, assume the risk of the effect of such negligence which is known to him, or is obvious or plainly observable, and the danger of which is appreciated by him, or is clearly apparent, just as completely as he assumes the ordinary risks of his occupation. * * * The absence of any fence about the revolving cogwheels, and the risk and danger of injury by them, were so plainly observable by the decedent, who had been oiling them and passing them on the plank by their side about once an hour, that he could not have failed to have seen and known them."

190 F.—6

"Finally, attention is called to the rule that a recovery may sometimes be had where the risk is obvious, but the danger is not fully appreciated by the party injured; and counsel argue that the question whether or not the decedent appreciated the danger should have been submitted to the jury. But the decedent was a man presumably possessing the ordinary faculties of an adult who has a sound mind and body. It is true that he was a Finlander; but the statement of his counsel contained no intimation that he could not see these engaging wheels, could not understand or know that they would crush a human being drawn between them, that a person upon the revolving horizontal wheel might be caught between them, and that the clothes of one caught between the engaging cogs would draw him between the wheels; and in the absence of any claim or declaration that he had not the ordinary intelligence, ability, and prudence of men in like situations, he must be presumed to have been a Finlander of ordinary prudence and intelligence. And one cannot be heard to say 'that he did not know or appreciate a danger, whose knowledge and appreciation were so unavoidable that a person of his prudence and intelligence could not have failed to perceive and appreciate it. * * * Under the settled rules of law to which reference has been made, the plaintiff was not entitled to recover any damages of the defendant in this case, and there was no error in the court's instructions to the jury to that effect."

The law deals with men in their various relations in life as endowed with average intelligence and capacity, and recognizes their limitations; but in this case we are not required to indulge in or rely upon presumptions. The plaintiff was a man in the full possession of all his mental faculties and of more than average intelligence and experience. He had worked in this mine continuously for a period of about five months. He rode in and out of the mine daily on the train, and could see the naked, exposed trolley wire within a few feet—nay, within a few inches—of his eyes. He could see that it was not guarded or protected. He could see the sparks flying from the wire as the trolley passed over it. He knew that the wire conducted sufficient electricity to propel a train of 10 or 12 cars. In his daily walks through the narrow tunnels of the mine, the wire in many places came down as low as his shoulder, within a few inches of his head. He studiously and consistently avoided contact with the wire under these conditions for a period of five months. He saw his fellow workmen take the same precautions. He knew that he should not come in contact with the wire. He knew that, if he did so, he would "get hurt," or "get stung." And in the light of these facts, and possessed of this knowledge, how can it be said that he did not understand or appreciate the danger? All of these facts he admitted on cross-examination, but qualified them to this extent on redirect:

"Q. Williams, what knowledge did you have of the danger of touching that wire with the hose? A. Well, I didn't— I didn't intend to touch it at all with the hose. Q. Did you know whether it was dangerous to touch it with the hose? A. I knew it would shock you, but I didn't know it would knock you out. I didn't know there was enough power in it to hurt or to harm you."

But the question here is, not only what the plaintiff knew, but what should he have known by a proper exercise of his faculties, and the bare denial of knowledge by an interested party in such a case does not necessarily present an issue of fact for a jury. As said by the court in Bier v. Hosford, 35 Wash. 544, 77 Pac. 867:

"It was apparent and obvious that if, while running clothes through the machine, she should allow her hand or fingers to get caught between the nearest revolving cylinder and the hot concave iron underneath, she would suffer an injury. The bare statement of this proposition is sufficient to demonstrate its verity, notwithstanding respondent's statement that she was not aware of such danger. Physical facts, apparent to individuals of the most ordinary understanding, particularly those things capable of sensation and touch, cannot be overcome or discredited by word of mouth. Courts and juries in such instances are not warranted in making erroneous deductions from known premises."

Or, as said by the court in Maki v. Union Coal Co., supra:

"And one cannot be heard to say that he did not know or appreciate a danger, whose knowledge and appreciation were so unavoidable that a person of his prudence and intelligence could not have failed to perceive and appreciate it."

In this day and age we are hourly beset by wires laden with that mysterious, invisible, deadly force that man can master, but can so little understand. We know, however, that electricity will shock and burn. We know that it will maim and kill. This is a part of our common store of knowledge, and a person occupying the position of the plaintiff, with his knowledge and opportunities for gaining knowledge, will not be permitted to gainsay it.

"While electric companies are bound to use the highest degree of care practicable to avoid injury to every one that may be in lawful proximity to their wires, yet the ordinary person is held to know that danger attends contact with electric wires, and it is his duty to avoid them so far as he may." Haertel v. Pennsylvania Light & Power Co., 219 Pa. 640, 69 Atl. 282.

This rule applies with double force to the plaintiff here. Having reached the conclusion that it appears from the uncontradicted testimony that the plaintiff knew and fully appreciated the dangers surrounding him in the working place furnished by the master, I have no alternative but to direct a judgment for the defendant. This conclusion is so apparent and so self-evident to my mind that I can only account for the verdict on the theory suggested by the Supreme Court in Butler v. Frazee, supra—the notorious unwillingness of juries to apply the rule of assumption of risk in cases of this character.

Let a judgment be entered accordingly.