[No. 5472. Decided March 9, 1905.]

A. O. BELTZ, *Appellant,* v. AMERICAN MILL COMPANY, *Respondent.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—INJURY TO OPERATOR OF SAW—REMOVAL OF SAWDUST WITHOUT STOPPING SAW—NONSUIT. The operator of a re-saw, who is injured in removing sawdust while the saw was in motion, is guilty of contributory negligence, and a nonsuit is properly granted, where it appears that he could have stopped the saw for that purpose and obviated the danger, without stopping the other machinery in the mill, that the danger of removing the sawdust while the saw was in motion was open and apparent, and that in attempting to remove the sawdust without stopping it, he slipped and threw his hand into the saw.

SAME — EVIDENCE — OPERATION OF SAW — CROSS-EXAMINATION TENDING TO SHOW CONTRIBUTORY NEGLIGENCE. In an action for personal injuries sustained by the operator of a re-saw in attempting to remove sawdust while the saw was in motion, where the plaintiff testified at length as to the necessity of so doing, the mode of operation, and construction of the machine, it is proper to. ask on cross-examination how often the saw was stopped to permit the removal of sawdust, and the manner of stopping the saw; and the fact that such evidence tended to show contributory negligence is not a valid objection thereto.

[1]Reported in 79 Pac. 981.

Appeal from a judgment of the superior court, for Chehalis county, Irwin, J., entered July 15, 1904, upon granting a nonsuit, in an action for personal injuries sustained by the operator of a saw in attempting to remove sawdust while the saw was in motion.    Affirmed.

*Govnor Teats,* for appellant.

*J. B. Bridges,* for respondent.

RUDKIN, J.—The defendant owns a sawmill at Aberdeen, and the plaintiff, on the 11th day of August, 1903, was in its employ, operating a re-saw used in the manufacture of lumber.    This re-saw consists of a band-saw which runs upon two large wheels, one above, and the other below, the table used to receive the material to be re-sawed. The lower wheel is stationary, and is located down in the floor of the mill.    The upper wheel is adjustable so as to keep the band-saw tight, in case of expansion through heat or other cause.    The upper wheel is adjusted by means of weights attached thereto, and hung in a receptacle, which constitutes a portion of the frame of the saw.    The sawdust drops into a pit in the vicinity of the lower wheel, and is carried off through a pipe.    While this re-saw is in operation, the sawdust accumulates, more or less, beneath the receptacle containing the weights which adjust the upper wheel, and it becomes necessary to remove this dust, from time to time, so as to prevent its interference with the proper adjustment of the upper wheel.    According to the testimony of the plaintiff, it is necessary to remove this sawdust four or five times a day.    This can be done at noon or at night, or at other times when the machinery is stopped to change the saw or for other purposes.    At other times, it must be removed while the saw is in operation, or the saw must be stopped for the purpose of removing the sawdust.    From the testimony, it would probably

be necessary to remove this sawdust two or three times a day while the saw is in operation, or to stop the saw for that purpose.   This saw could be stopped without stopping or interfering with any other part of the machinery in the mill.   The saw was stopped by means of a rope, attached some fifteen or twenty feet from where the saw was operated.   To reach this rope the operator used one of the trucks employed in the mill.   The saw was stopped in this manner by the plaintiff whenever necessary to change the saw, or for any other purpose.   On account of the velocity of the saw, it takes it a considerable time to stop after the power is cut off.

The plaintiff always removed this sawdust without stopping the machinery, and saw other employees of the mill do the same.   He was instructed to keep the receptacle clear of sawdust, but had no instructions as to how he should do it.   On the above date, the plaintiff was clearing away the sawdust while the saw was in operation.   He thus describes the manner in which he received the injuries complained of:

"I was kneeling down and went to take out that sawdust in there, and it threw the sawdust up in my face, and I threw my hand up like that (indicating by placing his hand over his eyes), and I kind of slipped and threw my hand into it.   I went to clean out this sawdust in here; this band-saw was going around.   I started to clean it out, and the sawdust started to fly up in my face, and I threw my left hand over my face like that (indicating by putting his arm across his eyes), and slipped at the same time, and threw my right hand out to catch myself, and threw my right hand into the saw."

In addition to the foregoing facts, the plaintiff alleged that the defendant had failed to safeguard this re-saw, as required by the laws of the state of Washington.   The answer of the defendant denied negligence on its part, and pleaded affirmatively contributory negligence and assump-

tion of risk on the part of the plaintiff.  The plaintiff demurred to the defense of assumption of risk, and the demurrer was sustained.  At the trial a nonsuit was granted at the close of the plaintiff's case, and the plaintiff appeals.

As stated by counsel, the lower court granted the motion for a nonsuit on the ground that the appellant was guilty of contributory negligence.  We think the judgment of nonsuit should be sustained.  The complaint avers that it was dangerous to operate said re-saw, and to take the sawdust from said receptacle, but the appellant claimed in his testimony that he was not aware of such danger until the happening of the accident complained of.  The court must consider, not only what the appellant knew, but what he should have known by a proper exercise of his faculties. As said by this court in *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679, and repeated in many subsequent cases:

"Men, when they are working around dangerous machinery, must notice.  Their faculties and senses are given them for the purpose of self-preservation, and they must exercise them to a reasonable extent. . . .  The dangers in this instance were apparent, and the law is well settled that an employee when he assumes his employment takes the risk of all apparent danger.  This was the doctrine announced by this court in *Week v. Fremont Mill Co.*, 3 Wash. 629, 29 Pac. 215, and *Jennings v. Tacoma Ry. and Motor Co.*, 7 Wash. 275, 34 Pac. 937, and is the doctrine of common justice and right between employer and employee, and the doctrine of common sense."

To the same effect, see *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *French v. First Avenue R. Co.*, 24 Wash. 83, 63 Pac. 1108; *Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867.  In the last case this court quotes with approval from the opinion in *Greef v. Brown*, 7 Kan. App. 394, 51 Pac. 926, as follows:

"She could not fail to see and understand the danger,

for the reason that all the elements of it were wide open before her. The very thing happened which she knew was most likely to occur if she allowed her fingers to get between the cylinders, and no warning or caution could have increased her knowledge of the danger or the necessity for care. She therefore assumed the risk (*Luebke v. Berlin Machine Works*, 88 Wis. 442, 60 N. W. Rep. 711, 43 Am. St. 913,) and was guilty of contributory negligence; for the assumption of risk is a species of contributory negligence. This being true, it could make no difference even if plaintiffs in error had neglected reasonable precaution."

In *Steeples v. Panel & Folding Box Co.*, 33 Wash. 359, 74 Pac. 475, the court says:

"It is true the plaintiff testifies that he did not know that the platform was without a guard, but a plaintiff cannot recover simply by making a statement of that kind, if, under the circumstances, it was his duty, as a reasonably prudent man, to have made such an examination as would have resulted in the desired information. Yielding adherence to the statement often announced by this court, that, where the evidence shows that there could be any difference in the minds of reasonable men as to whether or not a plaintiff was guilty of contributory negligence, it is for the jury and not the court to enter into an investigation of, and decide, that question—we are of the opinion that the state of facts shown in this record precludes any such difference of opinion, and that it must be held that, as a matter of law, the plaintiff was guilty of contributory negligence."

In *Johnson v. Anderson etc. Lum. Co.*, 31 Wash. 554, 72 Pac. 107, the court says:

"We think, under the circumstances as stated by the appellant, that it was his plain duty to have stopped the running of the edger before attempting to clear out the chute in the dark, and that when it appears by a man's own statement that he attempted in the darkness, in a cramped place, such as this was described to be, to work around and with revolving saws and shafts, there cannot be any difference of opinion in the minds of reasonable

men as to whether or not he was guilty of contributory negligence. The negligence was so palpable that we think the court was justified in sustaining the motion for non-suit."

Every case in which negligence or contributory negligence is charged depends so largely upon its own particular circumstances that the decisions in other cases are only important in so far as they lay down or establish general rules or principles. We think it can safely be said in this case that the danger of removing the sawdust from this receptacle with the hand, while the saw was in operation, was open, apparent, and obvious. The appellant, as a man of common understanding, knew and fully comprehended the likelihood of his hand coming in contact with a rapidly moving saw, and he knew that such contact could have but one result, and that was serious bodily injury to himself. There were two ways in which the sawdust could be removed, the one free from danger, the other fraught with danger. The appellant voluntarily chose the latter, and should not now be permitted to visit the result of his misfortunes and indiscretions upon others. In *Hoffman v. American Foundry Co., supra,* this court said:

"There were two methods by which this could have been done, one of which was perfectly safe and the other beset with peril and danger. The rule is well settled that where there are two methods by which a service may be performed, one perilous and the other safe, an employee who voluntarily chooses the perilous rather than the safe one, cannot recover for an injury thereby sustained. Bailey, Master's Liability for Injuries to Servant, p. 161, and authorities cited."

And this is the long established rule.

The appellant also assigns as error the ruling of the court in permitting certain questions to be asked on cross-examination. On his direct examination the plaintiff

testified at length as to the construction of the machinery, the mode of operation, the necessity of removing this sawdust, how often it should be removed, the manner of removing it, etc. We think it was pertinent to ask the witness on cross-examination how often the saw was stopped so that the sawdust could be removed without danger, the manner of stopping the saw, etc. This testimony was connected with the subject matter of the direct examination, and the fact that it might tend to show that the appellant was himself guilty of contributory negligence is no valid objection to it.

In view of the conclusion we have reached on the question of contributory negligence, we deem it unnecessary to pass upon the question of the failure of the respondent to properly safeguard the machinery, or whether there was such failure.

There is no error in the record, and the judgment is affirmed.

MOUNT, C. J., HADLEY, FULLERTON, and DUNBAR, JJ., concur.

ROOT and CROW, JJ., took no part.