[No. 6918. Decided November 21, 1907.]

NELS C. RAVEN, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES—ASSUMPTION OF RISK—DANGERS —METHOD OF WORK. A servant assumes the risk of injury from an appliance whereby heavy electric motors were lifted and suddenly lowered by releasing a crank, causing the crank to revolve rapidly while still held by the employee, where it appears that he had worked with the appliance every day for two months, and knew of the danger and that a man had recently been injured by the rapid revolutions of the crank, there being nothing obscure or complicated about it (DUNBAR, J., dissents).

[1]Reported in 92 Pac. 451.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 6, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee of an electric company while removing a motor from the trucks of a street car. Reversed.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.

*E. P. Dole* and *J. E. McGrew*, for respondent.

Root, J.—Respondent was employed by appellant in its car barns, and a portion of his work consisted in removing to and from the trucks of its cars electric motors used thereon. The method of doing the work was something like this: By the side of the car track there was a derrick which had upon it a large shaft or drum, around which a cable was wound and extended along a crane to a pulley at the end thereof, which crane could be swung over the trucks of a car when they were brought upon the tracks to the side of said derrick. When it was desired to remove a motor from the trucks of a car, the cable was fastened to the motor and the latter was raised by the turning of a shaft or drum by means of a crank, or two cranks, one at either end. When the motor was suspended in the air, it would be held in such position by one or two men at the crank or cranks, while two other men would take hold of the motor and swing it to and fro until it was immediately over the place where it was desired to be placed, when, upon a signal, it would be quickly dropped by the man or men holding the crank releasing their resistance and letting the drum or shaft revolve backwards, keeping hold, however, of the handle to the crank. The mechanism of the apparatus was such that, when a motor was suspended in the air and the resistance was released, the crank would reverse very rapidly. The gearing was such that it took about eleven revolutions of the crank to raise or lower the motor a distance of one inch. Consequently, when a motor was permitted to drop suddenly, the crank would whirl with great rapidity.

At the time of the accident respondent and two other men were handling one of the largest motors used by the company. The evidence showed that it weighed 2,349 pounds and was, with possibly one exception, the largest size used by appellant. The next largest size weighed 2,100 pounds, the next 1,865, and there were several smaller sizes. Respondent testifies that he had never, prior to that time, assisted in handling one of the motors of this size, although he admits that he had handled the size next smaller. He says the appearance of the motors was such that he could tell which was the heavier. At the time in question the motor was raised by the respondent and a fellow workman named Beach, working at the crank. After it was suspended in air, one Regalia, who is alleged to have been a foreman in immediate charge of the work, called Beach to help him swing the motor so as to have it placed at the point desired. Respondent remained at the crank and held the motor in position while the other two men swung the same until it was immediately over the position where it was desired to be placed. The foreman then called out, "Let her go," and respondent immediately let the motor drop, as was customary in such cases. As he did so, the handle of the crank, upon which he kept his hand, flew around with great rapidity and struck him upon the head, causing a very serious injury.

Respondent had been working at this kind of work for two months. While working there, another workman had been injured in the same manner as he. On the witness stand he admitted that he had talked with the foreman two weeks before about this appliance being a dangerous one, and also admits that he had heard the foreman caution another workman about the dangers thereof. The case was tried to a jury, which returned a verdict in favor of the plaintiff, upon which judgment was entered in his favor. From this the present appeal is prosecuted. The defendant denied negligence and alleged contributory negligence and assumed risk as affirmative defenses.

The evidence was sufficient to justify a finding that the defendant was guilty of negligence, and we need not discuss that question. As to the defense, however, we think that the evidence of the plaintiff himself shows that he assumed the risk of the danger which occasioned his injury. He had worked in this position for two months. He had handled and worked about this appliance every day during that time, hoisting and moving about motors of various sizes. The work had been frequently done by three men. It was necessary for two of the men to steady and swing the motor when suspended in the air, in order to bring it over to the exact place where it was desired to be located. It is urged by respondent that he did not assume the dangers caused by the condition brought about when the foreman called Beach from the crank to assist in swinging the motor. The evidence shows that this was the method ordinarily followed. Respondent knew that probably either he or Beach would be so called.

It is urged that, as this was a heavier motor than respondent had ever lifted before, the foreman should have had an extra man there to help hold the crank, or that a ratchet or rope brake should have been employed, and that respondent should not have been left to lower the weight alone without these appliances. Respondent admits that he could tell by the looks of the motor that it was one of the heavy motors; that there was a difference in the size, the heavier being the more bulky. It also appears by his own testimony and that of his witnesses that the method by which this work was done required the lowering of the motor suddenly. When the two men swung it upon the chain suspended from the crane above, they did so in order to carry it over to the particular point where it was desired to be placed, and it was the custom and likewise a necessity to drop it quickly when that location was reached. This being true, it would make no difference whether there was one man or half a dozen holding the crank. The motor could not be dropped suddenly without the resistance upon the crank being suddenly released. This sudden release

of the sustaining force permitted the motor to drop, and necessarily caused the rapid revolution backwards of the shaft upon which the crank was attached. It is apparent, as plaintiff practically admits in his evidence, that a ratchet or rope brake would have been of no avail; and it would make little difference whether the motor weighed 2,400, 2,100, or 1,800 pounds.

There is no contention that respondent was unable to hold the weight of this motor. He did hold it, and apparently without any difficulty, until he received the signal to "Let her go." It was stated by witnesses, on the part of respondent, that two men could not have done this work that respondent was doing so readily as one, for the reason that it was necessary to release the resistance and lower the motor quickly, and that two men could not act exactly in unison. But if there had been two men and they had both complied with the order of the foreman instantly in accordance with the method by which the work was ordinarily done, the shaft would have revolved in exactly the same manner in which it did in this instance. The danger would have been exactly the same. There was nothing obscure or complicated about the crane or any of the appliances connected therewith. They were simple and well understood by the respondent.

It is not claimed that there was anything broken or out of repair. Respondent had handled motors in this same manner daily for two months and had observed the rapid manner in which the handle of this crank always flew around whenever a motor was dropped into position. Any one would know that the rapid whirling of this crank handle would seriously injure any one who should get in its way. Respondent, of course, knew this, and he also knew that another man had recently been injured thereby, and he had heard the dangers thereof spoken of and had himself discussed them. He knew the appliance was not equipped with a brake or ratchet. He knew that if by any mishap he should get in the way of the

41—47 WASH.

handle of the crank when it was released, a serious injury must of necessity result. Knowing all of these things he continued in the work and unfortunately became a victim of the dangers which had for weeks been apparent to him. Under the circumstances of this case, the law is well established in this and other states that the injured workman cannot recover.

In the case of *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275, 34 Pac. 937, this court said:

"It is claimed by the respondent that the rule that, where a servant enters upon employment, 'he assumes the usual risk and perils of the service,' as applied to the facts of this case, still gave the respondent the right to assume that the master had furnished him a safe and convenient place in which to perform the services required of him. That proposition is no doubt correct, but the assumption cannot be relied upon after actual knowledge to the contrary is brought home to the mind of the servant. The assumption will control only where the danger is not apparent. No sane man is expected to act on an assumption which he knows to be false."

In the case of *Brown v. Tabor Mill Co.*, 22 Wash. 317, 60 Pac. 1126, discussing the facts, the court said:

"It does not appear that any change was made in the position or condition of the shafting during the time that respondent was employed in the mill, nor that it was any more hazardous or dangerous to pass under it at the time the injury occurred than it was at any time previous thereto. . . . The motion for nonsuit should have been granted. The rule that an employee, on entering upon the duties of his employment, assumes all the risks incident to such an employment which are apparent and obvious and which he could by the exercise of common prudence avoid, is well settled in this state,"

citing numerous authorities. In principle we think it is impossible to distinguish the case at bar from the one just quoted from.

The case of *Trudeau v. American Mill Co.*, 41 Wash. 465, 83 Pac. 725, was one where the facts were very similar to those of this case. There the plaintiff was struck by a wrench

or crank attached to a shaft used to dump a load from a wagon. The case was stronger for the plaintiff, however, in that there the appliance was out of repair. It was claimed that the defendant had promised to remedy this defect and plaintiff was relying upon that promise when injured. But he knew of the defective condition and went ahead and attempted to dump a load of wood, when the shaft revolved rapidly and the handle of the crank or wrench struck him on the head, producing a serious injury. This court held that, as he knew the condition of the apparatus and the dangers which must necessarily come from a rapid revolving of the shaft when the load was dropped, he should have kept out of the way of injury, and the judgment of the lower court against him was affirmed. The injury to this respondent was one which strongly appeals to one's sympathy; but when we remember that he knew all about the appliance with which he was working and was familiar with the methods of the work and the dangers attendant thereupon, we cannot escape the conclusion that this case falls squarely within the rule of assumed risk. *Week v. Fremont Mill Co.*, 3 Wash. 629, 29 Pac. 215; *Olson v. McMurray Cedar Lum. Co.*, 9 Wash. 500, 37 Pac. 679; *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *Bullivant v. Spokane*, 14 Wash. 577, 45 Pac. 42; *French v. First Avenue R. Co.*, 24 Wash. 83, 63 Pac. 1108; *Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867; *Beltz v. American Mill Co.*, 37 Wash. 399, 79 Pac. 981; *Miller v. Moran Bros. Co.*, 39 Wash. 631, 81 Pac. 1089, 109 Am. St. 917; *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711.

The judgment of the honorable superior court is reversed, and the cause remanded with instructions to dismiss the action.

RUDKIN, MOUNT, and CROW, JJ., concur.

DUNBAR, J., dissents.