[No. 7304.    Decided October 15, 1908.]

MARTIN JASPER, *Appellant*, v. BUNKER HILL & SULLIVAN MINING & CONCENTRATING COMPANY, *Respondent*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—QUESTION FOR JURY. The plaintiff does not, as a matter of law, assume the risk from being entangled in rope, used by a foreman in attempting to replace a pulley on a line shaft while the machinery was running at full speed, where it appears from his testimony that the plaintiff was ordered to the place to assist the foreman, that he relied on the machinery being slowed down as was customary, that an unsafe frayed out rope that was dangerously long was used by the foreman without plaintiff's knowledge, and the evidence as to the powers of the foreman as a vice principal was conflicting; and it would be immaterial that a fellow servant selected the rope.

APPEAL—DECISION—REMAND. Upon the reversal of a judgment for failure to submit to the jury the questions of fact, a new trial must be ordered.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered July 3, 1907, in favor of the defendant by direction of the court, after a trial before a jury, in an action for injuries sustained by an employee. Reversed.

*Robertson & Rosenhaupt*, for appellant.

*Myron A. Folsom*, for respondent.

DUNBAR, J.—Plaintiff was employed, and had been for several years, as a jig tender in the defendant's concentrating plant at Kellogg, Idaho.  A jig is a piece of machinery which

[1]Reported in 97 Pac. 743.

separates the ore from the quartz. The complaint alleges, that Knut Home was the defendant's general foreman, with full power of direction, etc; that on the 20th of April, 1905, while separating ore by use of these jigs—there being a great number in the mill—the belt, by reason of the negligent construction of said machinery, came off the line shaft pulley at jig No. 18; that the foreman directed plaintiff to take his place while the belt was on the local pulley at jig No. 18, and to hold the belt on to said pulley while he, the foreman, attempted to replace the belt upon the line shaft pulley, and, briefly, that he obeyed orders; that the foreman negligently used an old, frayed rope that was too long, and undertook to replace the belt while the machinery was running at full speed; that the rope became entangled in the belt and gearing, and catching the plaintiff's arm, caused him to be severely injured; and asked for judgment in the sum of $4,000. The answer, in effect, denied that Home was a vice principal, but alleged that he was a mere night boss, and at the time a fellow servant; denied that the machinery or appliances were in any way defective, and pleaded assumption of risk by plaintiff. On the conclusion of all the testimony, the court took the case from the jury and entered judgment for defendant.

From the remarks of the court, made in disposing of the case, it is apparent that it acted on the assumption that the appellant had assumed the risk of the dangers of the situation. The pertinent testimony in this case is not very voluminous, and we have examined it carefully, and from such examination conclude that it was peculiarly a proper case for submission to a jury. Certainly if the testimony of the appellant was true, that he was ordered by the foreman to take the position that he did take, that he relied upon the foreman's ordering the machinery slowed down, as he testified was the custom, that an unsafe appliance, viz., a frayed out rope that was dangerously long, was used by the foreman without appellant knowing at the time what kind of a rope was being

used; it is difficult to see how the doctrine of assumption of risk can be applied. The testimony is absolutely conflicting as to the powers of the foreman, or night boss as he is termed by the respondent. If the testimony of the appellant is true, there is no question but that Home was a vice principal, although we are not prepared to say that the converse would be true, conceding the truthfulness of the testimony of the respondent. But in any event, it cannot be said that it was established as a matter of law that Home was not a vice principal. The same may be said as to the condition of the rope which was used. According to the testimony of the appellant, the rope was dangerously long and was frayed and raveled, making it liable to be caught by rapidly revolving machinery; while even according to the testimony of the respondent, the rope was at least susceptible of honest criticism. What we said in *Shea v. Seattle Lumber Co.*, 47 Wash. 70, 91 Pac. 623, applies with special force to this case. There the plaintiff was injured by reason of the breaking of a stick which he used in clearing out the saw, and it was said:

"It is elementary law that it is the duty of a master to provide his servant with reasonably safe machinery, tools, and appliances with which to perform the work required of him, and also to keep the same in reasonably safe condition. Whether the stick used met this requirement was a question of fact to be submitted to the jury."

It is respondent's contention, however, that the foreman did not select the rope, but that he sent one who it is claimed was a fellow servant to get the rope. Conceding this to be true, it was the foreman who actually used the rope, and it cannot be questioned that his was the duty of inspection. The same conflict appears in relation to the alleged direction given to the appellant by Home. On that subject the appellant testified: "He came to me and said: 'Martin, there is a belt off over yonder. I will go up and run it on, and I want you to hold it on that loose pulley,' and I says: 'All right, sir;'" while Home testifies that he gave appellant no

orders whatever; that he had not spoken to him that evening, and that he did not know that he was assisting in any way in getting him the pulley. If this were true, and appellant was a mere volunteer or meddler, of course he cannot recover; but assuredly this is a question which must be determined by the jury. The same direct conflict of testimony is found in relation to the ordinary appliances used in other mills for replacing belts. And so, without further particularizing, every pertinent question tending to establish or disprove negligence on the part of the respondent or assumption of risk on the part of appellant, was met by a sharp conflict of testimony. The frank admission by the appellant that he had worked for several years as jig tender for respondent was about the only undisputed fact in the case, and this familiarity with the business, taken in consideration with the other facts, as claimed by the appellant, that he did not know the character of the rope which was used and that he relied upon the foreman slowing the machinery down, is not sufficient, we think, to establish assumption of risk as a matter of law.

It is urged by the respondent that, if this court finds error in the trial court to such an extent that the judgment will be reversed, the case should be submitted to the jury only as to the extent of damages. But were we to do this, we would commit the same error that the learned trial judge did, viz., a determination of questions of fact which can only be appropriately determined by the jury.

The judgment will therefore be reversed, and the cause remanded with instructions to grant a new trial.

HADLEY, C. J., CROW, MOUNT, and ROOT, JJ., concur.

FULLERTON and RUDKIN, JJ., took no part.