[No. 10873. Department Two. May 6, 1913.]

## LEO MARKS, *Respondent*, v. HURLEY MASON COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—FELLOW SERVANTS— VICE PRINCIPAL—QUESTION FOR JURY. In an action for injuries to an employee through the negligent act of another employee, whether the latter was a vice principal or a fellow servant is for the jury, where the evidence as to his duties as a foreman in charge of the work was in direct conflict.

SAME — NEGLIGENCE OF FOREMAN — VICE PRINCIPAL — DETAILS OF WORK. Where a foreman directed an employee to stand upon a brace, and then without warning loosened the brace and directly caused his fall and injury, his act is not a mere detail of the work

[1]Reported in 131 Pac. 1122.

of a fellow servant, but the positive act of a vice principal for which the master is liable.

SAME—NEGLIGENCE—SAFE PLACE. The rule of nonliability for the fall of temporary scaffolds when erected by the men does not apply to a case where a foreman in charge of the erection of concrete forms directed an assistant in the work to stand upon a brace, and then without warning and by his positive act loosened the brace and caused the employee to fall.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $12,500 for injuries sustained by a robust man, 34 years of age, earning four dollars a day, is not excessive, where he suffered an injury to the spine which experts testified would be permanent and result in total paralysis of the lower limbs.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered June 29, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in constructing forms for the concrete piers of a bridge. Affirmed.

*Reeves Aylmore, Jr.,* for appellant.
*Charles H. Miller,* for respondent.

MAIN, J.—The purpose of this action is to recover damages for personal injuries alleged to be due to the negligence of the defendant.

At the time of the accident, the defendant held a contract with the Northern Pacific Railway Company for the erection of concrete piers which were to be used for the foundation for a railway bridge to be constructed across the Cowlitz River near Olequa. The piers were to be solid concrete, and in order to construct them, it was first necessary to build forms which would confine the concrete until the same became hardened. On November, 5, 1910, the day of the accident, the plaintiff, together with other workmen, were erecting one of the forms. It is claimed by the plaintiff that one Bell was the foreman in charge of this work. The forms were erected in sections. First, heavy timbers were erected

with a distance between them equal to the width of the intended form. These timbers were held in place by braces, one-by-six planks. A plank would be nailed to the bottom of one timber, and at an elevation of about forty-five degrees, extend to the top of the heavy timber on the opposite side. From the lower end of the opposite timber would be extended a similar brace to the one on the other side. After these timbers were erected and braced, the shiplap which was to confine the concrete would be nailed on the inside. At the top of the section of the form, bolts or rods extend from the timbers on one side to those on the opposite, for the purpose of holding the forms together. After the timbers had been erected, the braces nailed on, the shiplap put in place, and the bolts or rods adjusted, it was necessary to put a heavy plank or planks near the top of the form for the purpose of extending it to the exact dimension desired. After one section of the form was erected, the top thereof furnished a platform upon which the men worked in erecting the next succeeding section.

On the day in question, the plaintiff and his associate were attempting to put the brace at the top of the third section of the form. While thus engaged, Bell directed the plaintiff's associate to step aside and let him take his place, there apparently being some difficulty in getting the brace into place. Bell, after taking the place of the plaintiff's associate, directed the plaintiff to step upon the lower end of the brace nailed to the heavy timber on the side where plaintiff was working, and thereby elevate himself to a position where he could perform the work with greater efficiency; Bell working on the opposite side. In response to this direction, the plaintiff got upon the brace facing outward, his back towards Bell, they both being engaged in attempting to get the brace in place at the top of the section. While thus engaged, and without warning to the plaintiff, Bell, taking a hammer, knocked the top end of the brace, on which plaintiff stood, loose from the heavy timber, and thereby

the plaintiff was precipitated eighteen or twenty feet to the ground below. The plaintiff fell with his back across a brace or timber, and broke or fractured two ribs on his left side. A few hours later the plaintiff was taken to a physician, where he received attention. He returned to the camp, where he remained for a period of three or four days, going then to his home in a suburb of the city of Portland. Here he remained for a period of two or three months, being, as he testified, confined to his bed the greater portion of the time. During this time he consulted a physician upon two or three occasions. It appears that, at the end of three months, he moved with his wife to the city of Seattle, and there remained until the time of the trial. From the time of going to Seattle until the date of the trial, he received constant professional attention. About eighteen months elapsed between the date of the injury and the time of the trial, and during this time plaintiff had been unable to perform any labor. At the time of the injury, he was a robust, healthy man, thirty-four years of age, weighing one hundred ninety-five pounds, and earning four dollars per day. Three months after the injury his weight was reduced to one hundred seventy-six pounds. And at the time of the trial, he weighed one hundred forty-five pounds. He claims that in the fall he received an organic injury to the spinal cord which produced traumatic neurosis. The expert witnesses called by the plaintiff testified that the injury was permanent and, in their opinion, would result in a comparatively brief period of time in the total paralysis of the lower limbs. The evidence on the part of the physicians called by the defendant was that from their examination, which took place a day or two before the trial, they were unable to find any symptoms which indicated that the spinal cord had been injured. While they did not say that in their opinion the plaintiff would completely recover, their evidence was to the effect that they found nothing in their examination that would lead them to

believe that a permanent recovery would not in time result, under proper treatment.

The case was tried to the court and a jury, and a verdict in the sum of $12,500 was returned in favor of the plaintiff. Motion for judgment notwithstanding the verdict and a motion for a new trial being overruled, the defendant appeals.

The points in issue are: First, was Bell a foreman or vice principal, or was he a fellow workman? Second, if he were a vice principal, was his act in knocking off the brace which precipitated the plaintiff to the ground a mere detail of the work for which the master would not be liable? Third, does the rule of nonliability as applied to the "Scaffold Cases" apply here? And fourth, is the verdict excessive?

I.   The question whether or not Bell was a fellow servant or vice principal is one of fact. The evidence on the part of the respondent was positive and unequivocal that the latter was his function; while the evidence on the part of the defendant was equally positive that his relation was that of a fellow servant to the other workmen there engaged. This being a question of fact upon which the evidence was in conflict, it is a matter which is within the province of the jury to determine. The jury were properly instructed upon the question by the trial court, and while there is no specific finding by the jury, yet the effect of their verdict is that Bell was a vice principal. Otherwise, under the instructions, they would have returned a verdict for the appellant. This question having been determined by the jury under proper instructions, must now be taken as a fact so far as the consideration of the case here is concerned.

II.   It is claimed by the appellant that the act of Bell which caused the accident was a mere detail of the work, and that in that act he, in any event, was a fellow servant and not a vice principal. In support of this contention the appellant cites *Swanson v. Gordon*, 64 Wash. 27, 116 Pac. 470; *Desjardins v. St. Paul & Tacoma Lum. Co.*, 54 Wash. 278, 102 Pac. 1034, and other cases of like import. The

principle that runs through these cases is that, where a vice principal is performing a mere detail of the work, and through his act or neglect a workman is injured, there is no liability on the part of the master, because in the performance of that duty he was, in effect, a fellow servant of the other workmen. But we think the principle of these cases is not applicable to the present case. The respondent's injury was directly due to the act of Bell in loosening the brace upon which the respondent stood at Bell's direction and without warning from him. This was not a detail of the work, but a positive act of Bell which produced the injury. The case falls within the principle stated in *Creamer v. Moran Bros. Co.*, 41 Wash. 636, 84 Pac. 592, and *Tills v. Great Northern R. Co.*, 50 Wash. 536, 97 Pac. 737, 20 L. R. A. (N. S.) 434. In the *Creamer* case, it is said:

"Under the authority of those decisions [*Nelson v. Willey Steamship etc. Co.*, 26 Wash. 548, 67 Pac. 237; *Dossett v. St. Paul etc. Lumber Co.*, 40 Wash. 276, 82 Pac. 273; *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114], when the superintendent, without the knowledge of the workman, negligently set in operation an agency fraught with danger, he thereby rendered the company liable for the result of such negligence."

III. It is argued that, inasmuch as the forms which were being erected at the time of the injury were temporary in their nature in that they were only erected for the purpose of confining the concrete until it had hardened, that the rule of the "Scaffold Cases" should apply, and the appellant should be exonerated from liability. The rule of these cases is that, where a scaffold is built by the workmen from suitable material furnished by the master, and the foreman in charge simply gives direction that the scaffold be erected, but no further instruction, then there is no liability on the part of the master for an injury which is produced by a defect in the scaffold.

In *Metzler v. McKenzie*, 34 Wash. 470, 76 Pac. 114, it is said:

"We think that the action at bar falls within the rule announced in the above authorities, that, where competent men are employed to do some work on a structure upon which scaffolding, or some other appliance to support the workmen, is required—'the employer to furnish the materials, and the employed to construct or adjust the scaffolding or other appliance—the employer is not liable to one of the employees for the careless act of another employee done in the construction, adjustment, or maintenance of the structure or appliance.'"

But this rule is clearly not applicable to a situation where the foreman directs a workman into a place which is then safe, and subsequently and without warning, by his own act, renders the place unsafe. The proposition that it is the duty of the master to furnish the employee a safe place in which to work is so well settled as not to require the citation of authority in its support. And if it is the duty of the master to furnish a safe place, it is equally his duty to refrain from causing the place to become unsafe by his positive act or that of his foreman, for which he is responsible.

IV. It is argued that the verdict is excessive. If the evidence of the appellant's witnesses is to be accepted, the verdict is for such an amount as to indicate passion or prejudice on the part of the jury that rendered it; but if the evidence of the respondent's witnesses is to be believed, there is abundant substantial evidence to support it. Apparently, the jury believed that the evidence of the latter described the real condition. There being substantial evidence to support the amount of the verdict, and the jury having passed upon the conflicting evidence, we think the verdict should not be disturbed.

The judgment is affirmed.

CROW, C. J., ELLIS, FULLERTON, and MORRIS, JJ., concur.