[No. 15127.   Department Two.   April 22, 1919.]

JOHN BELL, *Respondent,* v. H. A. LILLIBRIDGE,
*Appellant.*[1]

MASTER AND SERVANT (163)—INJURIES TO SERVANT—QUESTIONS FOR
JURY AS TO CONTRIBUTORY NEGLIGENCE. Whether a threshing machine
operator was guilty of contributory negligence in failing to notice
that a guard had been removed from a sprocket wheel, is a question
for the jury, where he had repaired and replaced the guard, did not
know it had been removed, and placed his hand on the spot while
absorbed in an unusual duty in connection with assisting to start
the engine.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered July 5, 1918,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action in tort. Affirmed.

*Lee & Kimball,* for appellant.

*Ezra R. Whitla, E. C. Matthias,* and *Graves, Kizer
& Graves,* for respondent.

MOUNT, J.—On October 30, 1916, the plaintiff was
injured by having his hand and wrist caught in a
chain which ran over a sprocket wheel upon a tractor
engine. He brought this action for damages. Upon
issues joined, the case was tried to the court and a
jury, resulting in a verdict and judgment in favor of
the plaintiff for $4,000. The defendant has appealed
from that judgment.

At the close of the respondent's evidence, and again
at the close of all the evidence, motions were made
for a directed verdict. These motions were denied.
After the verdict, a motion was made for judgment
notwithstanding the verdict. This motion was also
denied. The appellant insists that the court erred in

[1]Reported in 180 Pac. 472.

denying these motions. No other errors are presented. This necessarily involves a consideration of the facts in the case. They may be briefly stated as follows: In the year 1916, the appellant was operating a threshing machine for threshing wheat, in Alberta, Canada. During the fall of that year, the respondent was employed to attend the separator. Another man was employed to attend the tractor which furnished the motor power for the separator. Before commencing threshing, the respondent assisted the engineer in repairing the tractor. The respondent had some experience as a mechanic. This tractor was what is known in the record as a 30-60 oil-pull kerosene Rumely tractor. Upon the left side of this tractor, was a fly wheel. Upon the shaft of the fly wheel, was a small sprocket which operated a sprocket chain to an oil pump below the fly wheel and a little forward thereof. This sprocket chain and sprocket wheel which ran the oil pump were protected by a metallic covering, or guard. When the respondent and the engineer repaired the tractor, before the threshing season began, this metallic covering over the sprocket chain was taken off, repaired, and replaced in its proper position. At the trial, the respondent testified that he did not know that this guard or metallic covering over the sprocket wheel had been taken off, but as a matter of fact it had been off for several days prior to the accident.

The tractor engine was run by kerosene. In order to start the engine in operation, it was necessary to put some gasoline in the carburetor, take hold of the fly wheel, and give it a turn, when the engine would start by the use of the gasoline. It was then necessary to turn on the kerosene which kept the engine going. It was sometimes difficult to start the engine.

After the respondent had been employed by the appellant for about a month, and on the 30th day of October, 1916, when it is conceded that the season was getting late, snow was beginning to fall and the appellant was urging his men to make haste with the threshing of the grain, after the machine had been in operation for two or three hours, the supply of kerosene became exhausted, the engine was stopped, a new supply of kerosene was obtained, and it was necessary to start the engine. The respondent testified that he had been told that it was a part of his duty to help start the engine. Upon this occasion, when the engine was ready to be started, the respondent gave the fly wheel a turn, at the request of the engineer, and the engine apparently started; but it began to sputter, which indicated that it was not getting kerosene. He had been told when that condition arose it was necessary to open a little valve underneath the engine so that the kerosene might flow into the carburetor. In attempting to open this valve, he reached under the engine with his left hand, and at the same time placed his right hand against the sprocket wheel of the oil pump where the covering had been removed; and, there being a defective link in the chain, his hand was crushed in the sprocket wheel. Upon the left side of the engine there was a running board about eighteen inches wide which extended from the front of the engine on the left side back to or near the fly wheel. This running board, when a man was standing close by the side of the engine, came down to about his shoulders. In order to reach the valve underneath the engine, it was necessary for him, therefore, to stoop slightly to see the valve.

The appellant contends that the respondent assumed the risk and that he was guilty of contributory

negligence as a matter of law in not seeing that the guard over the sprocket wheel had been removed. This is his sole contention. He bases this contention upon a number of cases from this court where we have said, in effect, as in *Beltz v. American Mill Co.,* 37 Wash. 399, 79 Pac. 981, *Olson v. McMurray Cedar Lumber Co.,* 9 Wash. 500, 37 Pac. 679, and other cases of that same character, that,

"Men, when they are working around dangerous machinery, must notice. Their faculties and senses are given them for the purpose of self-preservation, and they must exercise them to a reasonable extent."

So the question here is, whether, under the facts shown upon this record, the respondent was guilty of contributory negligence as a matter of law and he assumed the risk. The evidence, we think, conclusively shows that a guard over this sprocket wheel and chain was the regular factory equipment of the machine. The evidence on the part of the respondent shows that he had helped to repair this guard and place it in position after it was repaired; and that, at the time of the accident, he did not know that it had been removed and did not notice that the chain was exposed at the time of the accident. The primary duty of the respondent was to attend to the separator, which was usually about eighty feet away from the tractor. It is conceded that, prior to the time of the accident, the appellant had urged his men to make haste to finish the work and keep the machinery in operation. It was a part of the respondent's duty to help start the tractor when it was required to be started. So that the principal question in the case necessarily is: Should the respondent, at the time he undertook to open the valve under the tractor after the engine had been started in operation, have seen

that the guard over the sprocket wheel had been removed?

It is argued by the appellant that this sprocket wheel was in plain view of the respondent and that, if he did not see it, it was his duty to have done so. We think there are circumstances in this case which make that a question for the jury. The respondent did not know that the guard had been removed. He had, in the early part of the season, helped to repair the guard and place it in position. When he started the engine by turning the fly wheel, he was necessarily standing close to the fly wheel, which was a little above his head. In order to start the fly wheel, it was necessary for him to use much force to turn the wheel. Immediately when the engine started, it began to sputter, which indicated that he must open the valve underneath the engine in order that kerosene might be permitted to flow into the carburetor. It was necessary, of course, to do this quickly. His attention must have been riveted upon the position of the valve, and he apparently reached quickly for the valve with his left hand, intently looking to locate that valve. His mind was not upon other parts of the machinery, and we think he had a right to suppose that the other parts of the machinery were in their ordinary condition, unless the condition was so obvious that he must have seen it by casual observation. When standing erect, close to the tractor, he could not see the sprocket wheel or chain because of the running board. Whether the condition was so open and apparent that a casual observer would have noticed it, was a question for the jury. As stated in Labatt's Master & Servant, Vol. 4, § 1322:

"If it was not a recognized fact of the functions of the servant to look out for dangerous conditions of the same kind as those which caused the injury (see

§§ 1338 *et seq., post*), and his chances of observation were merely such as were casually afforded by occasional proximity to the defective instrumentality, it is for the jury to determine whether he ought to have discovered the conditions."

While the evidence shows that the respondent had assisted in starting the engine upon different occasions, his testimony was to the effect that he had never before been required to open the valve underneath the engine, and that he did not know the guard had been removed from the sprocket wheel, and did not notice, when reaching for the valve underneath the engine, that the condition of the sprocket wheel had been changed since he saw it last. We are satisfied, therefore, that, whether he did see that the guard over the sprocket wheel was removed, or whether he should have seen it, under the circumstances, was a question of fact to be submitted to the jury. No complaint is made that the question was not properly submitted to the jury, but it is contended by the appellant that the court should have directed a verdict as a matter of law.

We are satisfied that the court properly submitted the question to the jury and that the question was not one of law.

The judgment must therefore be affirmed.

CHADWICK, C. J., PARKER, FULLERTON, and HOLCOMB, JJ., concur.