[No. 31489. Department Two. May 10, 1951.]

A. A. RAWLINS *et al.*, *Appellants*, v. W. FRANK NELSON, *Respondent.*[1]

¹Reported in 231 P. (2d) 281.

*Minnick & Hahner,* for appellants.

*Casey & Johnson,* for respondent.

HAMLEY, J.—A. A. Rawlins was seriously injured when the tractor he was driving in the course of his employment on the farm of W. Frank Nelson went over a bank and overturned. Rawlins, who will be referred to as if he were the only plaintiff and appellant and his wife, Dorothy Rawlins, brought this action for damages. The jury brought in a verdict for plaintiff in the sum of fifteen thousand dollars. The trial court denied defendant's motion for a new trial, but granted his motion for judgment notwithstanding the verdict of the jury. Judgment for defendant was entered accordingly. Plaintiff appeals.

█ The issues before us relate to contributory negligence, assumption of risk, and vice-principalship. The determination of these issues turns largely upon the particular facts of this case, and it will therefore be necessary to outline the evidence in considerable detail. In so doing we will give effect to the rule, applicable where a judgment n. o. v. is under review, that the court must not only accept as true all competent evidence in the record favorable to the party against whom the motion is directed, but must give such party the benefit of every favorable inference which may be reasonably drawn from such evidence. *Fetterman v. Levitch,* 7 Wn. (2d) 431, 109 P. (2d) 1064; *Cox v. Old Nat. Bank & Union Trust Co.,* 17 Wn. (2d) 494, 136 P. (2d) 163; *Wilcoxen v. Seattle,* 32 Wn. (2d) 734, 203 P. (2d) 658.

Rawlins made his living operating his ten-acre sugar beet farm and working as a farm laborer for his neighbors. About ten days before the accident, which occurred on December 8, 1948, he went to work on Nelson's dairy farm near College Place, Washington. Nelson, who was at the farm only at milking time, gave Rawlins no instructions except as to his hours of work. He assumed that Rawlins would learn the routine from other employees.

One of the daily tasks on the dairy farm was to haul chopped hay to a feed rack which had been placed in what was known as the Bangs herd feed lot. This lot, situated on top of a hill, is about one hundred seventy-five feet long from east to west. It is about thirty-three feet wide at the east end and sixty feet wide at the west end. The south side of the lot, which is not fenced, runs along the top of a rather steep bluff or bank twenty to thirty feet high. The other three sides are fenced. The feed rack was located towards the west end of the lot. It was from twenty to twenty-five feet from the north and west sides of the lot, and from fourteen to seventeen feet from the top of the bank which marked the south side of the lot.

The entire feed lot slopes in a southwesterly direction. Approaching the south side of the feed rack from the east gate, the downhill grade is close to thirteen per cent. The grade immediately north of the feed rack is somewhat less

steep, although it has a grade of fifteen per cent in spots. The soil in the feed lot is a light, chalky, volcanic ash which, when packed hard, becomes very slippery. On the day of the accident, the surface of the feed lot was covered with an accumulation of manure, mire and mud. The heaviest such accumulation was in the area north of the feed rack.

In carting hay to the feed rack, it was necessary to enter the lot at the east end, through a panel gate, so that advantage could be taken of the downhill grade. Two routes were possible: Along the north side of the feed rack and out through a panel gate to the west end, or along the south side of the rack and out through a swinging gate at the west end. This latter route, which we will call the south route, was the one customarily used by Nelson's employees both before and after Rawlins' accident. The south route was preferred because it had less of an accumulation of manure, mire and mud, and was ordinarily drier than the north route. Another reason why Nelson's employees usually chose that route was that the prevailing winds were from the south, and it was naturally desirable to unload the chopped hay with the wind rather than against it.

The record reveals only two instances when the employees had used the north route. Ernest Blue, one of these employees, had used the north route once when a north wind was blowing. Another employee, James Schmidt, tried the north route the day before the accident, but could not stop by the feed rack, and broke through the west end panel gate.

Two days before the accident, Rawlins, upon the suggestion or order of Blue, took the south route and completed the unloading of hay and made his exit from the feed lot without incident. This was the only time prior to the accident that Rawlins was given the task of filling the feed rack. There was a heavy rain on the night and early morning preceding the accident. Later in the morning Rawlins walked through the lot, and reached the conclusion that the north route was then impassable. One witness testified that the accumulation on the ground north of the feed rack was more than sixteen inches deep at that time.

It was approaching the noon hour when Rawlins drove into the lot through the east gate on the trip which ended in the accident. Blue was standing by the panel gate as Rawlins entered. Blue told Rawlins to take the south route, and to "hug the bank" so that the trailer would clear the feed rack when Rawlins left by the west swinging gate.

When Rawlins entered the feed lot on this trip, he was driving a Farmall model "M" tricycle type tractor. There was considerable testimony to the effect that this type of tractor is unsafe and unsuited for use on sloping ground, particularly where the surface is either soft or slippery. Under such conditions, it was stated, a tricycle type tractor is unstable, unmanageable and prone to skid suddenly out of control and overturn. Rawlins was an experienced dairy farm hand and was accustomed to use farm machinery of various kinds, including tricycle type tractors. However, he had had no previous experience operating such a tractor on sloping ground, except for the one trip he had made into the feed lot two days earlier when the ground surface was comparatively dry.

There was mounted upon this tractor a complicated hydraulic hoist known as a "Farmhand," which is useful in many farm tasks such as lifting objects, loading manure, and stacking hay. The Farmhand was not used in any of the feeding operations. It had been installed on the tractor about six weeks earlier to haul some dirt, and had not been used since then for any other purpose. The Farmhand has a steel superstructure weighing fifteen hundred to eighteen hundred pounds, mounted above the center of gravity of the tricycle tractor. The top of the implement is about eight feet above ground level. It has horizontal telescoping booms eleven to sixteen feet in length, to which is attached a manure fork weighing about three hundred pounds. Several witnesses testified that a Farmhand, when mounted on a tricycle tractor, greatly increases the tractor's instability. Rawlins had never operated a tractor so equipped prior to coming to work for Nelson.

The tractor driven by Rawlins with the Farmhand mounted upon it was pulling a four-wheel John Deere rubber-tired wagon. This wagon weighed about seven hundred fifty pounds empty, and was loaded with five hundred to seven hundred pounds of hay. Several witnesses testified that such a load, pushing the tractor from the rear on a 12.82 per cent grade in the feed lot, would add substantially to the operator's difficulty in controlling the tractor. The over-all length of the tractor, Farmhand and feed wagon was thirty-five feet six and one-half inches.

Entering the feed lot from the east Rawlins swung the equipment to the south in accordance with Blue's suggestion or direction, which coincided with his own opinion as to the best route. When he reached a point about eighteen feet from the east end of the rack, he lost control of the tractor. The evidence is in conflict as to whether this was due to an error on his part in stepping on the wrong brake, or to the inability of the described equipment to negotiate the slippery grade. In any event, the tractor and wagon went over the bank and overturned, severing Rawlins' right leg.

Appellant produced evidence tending to prove that respondent was negligent in failing to furnish a safe place to work; in failing to provide safe machinery for the use of his employee; in failing to instruct Rawlins in the proper use of the equipment and manner of entering and leaving the feed lot; in failing to provide proper supervision; and in failing to inspect the working conditions and equipment. Respondent produced controverting evidence, but the jury, comprised largely, as the trial court stated, of Walla Walla county farmers, apparently believed that negligence had been established.

The question of whether respondent was negligent in failing to provide reasonably safe equipment or a reasonably safe place to work, or in other respects, was apparently regarded as foreclosed by the verdict. Neither the trial court in its memorandum opinion, nor respondent in his brief on appeal, took the view that it should be held, as a matter of

law, that Nelson was not negligent. We are therefore not called upon to discuss the question of primary negligence.

The first question presented for our consideration relates to assumption of risk. In granting judgment for respondent n. o. v., the trial court held, as a matter of law, that appellant assumed the risk of this kind of an accident.

By its instructions Nos. 7, 8 and 9, the court correctly advised the jury regarding the doctrine of assumption of risk, as applied to dangers normally incident to the occupation, and as applied to extraordinary dangers. With respect to dangers normally incident to the occupation, the jury was told that an employee assumes such risks, whether or not it is a hazardous occupation, provided that if the risk is attributable to negligence on the part of the employer in failing to provide safe appliances and a safe place to work, the employee does not assume such risk unless the defect is so plainly observable that the employee may be presumed to have known of it, and unless, as an ordinarily prudent person, he should have appreciated that such defect endangered his safety. With respect to extraordinary dangers, the jury was told that an employee assumes the risk, if it is open and apparent, although due directly to the employer's negligence. These instructions, as summarized above, are in accord with the views of this court expressed in *Cummins v. Dufault*, 18 Wn. (2d) 274, 139 P. (2d) 308.

Our only appropriate inquiry on this branch of the case is whether, applying these instructions, the court was correct in concluding that there was no substantial evidence supporting the jury's finding that appellant had not assumed the risk.

The jury could have found that the accident was caused by one, or a combination of any two or more, of the following factors: (1) The inherent instability of the tricycle type tractor when operated on the sloping terrain of the feed lot; (2) the top-heaviness of the Farmhand mounted on the tractor; (3) the slippery condition of the feed lot surface on the day in question; and (4) the physical layout of the feed lot, including the close proximity of the feed rack to the bank on the south side.

In our view, the jury could have found that each of these was an extraordinary danger—a danger which was not normally incident to the occupation of dairy farming. Even if considered to be dangers normally incident to the work, however, the jury could have found that, with the possible exception of the third factor listed above, the particular risks here encountered were attributable to the negligence of the employer in failing to provide safe appliances and a safe place to work. In either case, under the instructions referred to above, the employee would not assume the risk unless such dangers were open and apparent.

We are also of the opinion that the jury could have found that these dangers, with the possible exception of the last one named, were not open and apparent to Rawlins. There was substantial evidence to the effect that appellant was not familiar with the inherent instability of tricycle type tractors when operated upon sloping ground. There was substantial evidence that appellant did not know that the Farmhand which was mounted upon the tractor would add to the danger of this type of tractor turning over when operated upon uneven or sloping terrain. There was substantial evidence that appellant was not aware of the treacherous nature of the ground surface under the accumulation of wet manure, mire and mud. Nor was there anything in the record which compelled the jury to believe that a reasonably prudent man under the same circumstances would have understood or observed that these risks existed, and would have appreciated the danger. Not being chargeable with knowledge as to these risks, it is immaterial whether or not appellant voluntarily chose the south route. For the same reason it is likewise immaterial that, viewed in retrospect, the north route to the feed rack was the safest.

The trial court apparently felt that *Cummins v. Dufault, supra,* was controlling and required a ruling, as a matter of law, that appellant here assumed the risk. The applicable legal principles, as announced in the *Cummins* case, are almost literally the same as those set forth in the trial court's instructions summarized above. But the two cases are, in

our opinion, distinguishable on the facts. In the *Cummins* case, the dangerous condition which caused the workman to fall from a tramway while moving hops from a drying room to an open bin, developed during the progress of the work. The workman himself contributed to the development of those conditions. From these facts, and the further fact that the workman had made numerous trips back and forth immediately preceding the accident, this court held that he was chargeable with knowledge of the risk and therefore assumed it. None of these factors is present in the instant case.

■ Respondent cites several other decisions bearing upon assumption of risk, all of which we have examined. In our view, none of them involves facts comparable to those which the jury may here have found to exist. The determination of whether a workman assumes the risk depends upon the facts and circumstances in each particular case, and the decisions in other cases are usually helpful only as they lay down or establish general rules or principles. *Beltz v. American Mill Co.,* 37 Wash. 399, 79 Pac. 981; *Cummins v. Dufault, supra.*

■ It is our conclusion that the record here does not support a court ruling, contrary to the finding of the jury, that appellant assumed the risk of being injured by the overturning of the tractor.

■ Respondent also argues that the judgment n. o. v. was called for because Rawlins was guilty of contributory negligence as a matter of law. It does not appear that judgment n. o. v. was granted on that ground. Respondent, however, may raise the point under the rule that, if a decision is based upon an erroneous ground, it will nevertheless be sustained if correct on any ground. *Buchan v. Knight,* 147 Wash. 659, 267 Pac. 43; *In re Rockwood Boulevard,* 170 Wash. 64, 15 P. (2d) 652; *In re Bodvin's Estate,* 37 Wn. (2d) 872, 226 P. (2d) 878.

Respondent contends that appellant was contributorily negligent in that he stepped on the left brake rather than the right one, which caused the tractor to turn left and pro-

ceed over the bank. Respondent produced considerable evidence from which this is inferable, including testimony relative to the tracks left by the tractor wheels. However, no one other than appellant was in a position to actually see whether appellant had applied his foot to the wrong brake immediately preceding the accident. Appellant stated categorically that he had stepped on the right brake and not the left one. He stated that after this "everything went blank," and he does not know whether or not his foot slipped from that brake. The witness Schmidt, who was friendly to appellant at the time of the trial, admitted that he had sought to destroy the skidmarks immediately after the accident, but had not completed this effort. He testified that, in view of the skidmarks, it is possible that appellant had stepped on both brakes.

█ It is far from clear that it would have been contributory negligence as a matter of law if appellant had stepped on the left brake instead of the right one, in view of the emergency situation which may have confronted him at the time. Assuming this, however, the fact remains that the testimony was in conflict on the point, and there was substantial evidence supporting appellant's version. The issue was accordingly one for the jury and could not properly be decided by the court as a matter of law. *Buss v. Wachsmith,* 190 Wash. 673, 70 P. (2d) 417; *Williams v. Hofer,* 30 Wn. (2d) 253, 191 P. (2d) 306.

Nor does the evidence show that appellant was guilty of contributory negligence as a matter of law in following the particular route he did in approaching the feed rack. As before indicated, there is substantial evidence indicating that he was not actually conversant with, or chargeable with knowing, all the conditions which tended to make the south route dangerous. If, as a reasonably prudent man, he did not know and appreciate the dangers inherent in traveling the south route, he was not contributorily negligent for having done so. See *Ramm v. Hewitt-Lea Lbr. Co.,* 49 Wash. 263, 94 Pac. 1081; *Well v. Moran Bros. Co.,* 55 Wash. 102, 104 Pac. 172; *Lander v. Shannon,* 148 Wash. 93, 268 Pac. 145.

In our opinion, the judgment n. o. v. is not supportable either on the ground specified by the trial court (assumption of risk as a matter of law), or upon the alternative ground suggested by respondent (contributory negligence as a matter of law).

It now becomes our duty, pursuant to rule 14 of Rules of Pleading, Practice and Procedure, 34A Wn. (2d) 78, to review and determine the validity of the trial court's action in denying respondent's alternative motion for a new trial. This motion was made on the statutory grounds. On this appeal, however, only one reason is advanced by respondent why the motion for a new trial should have been granted. This is that the trial court erred in failing to give one or the other of two proposed instructions bearing upon the question of whether Nelson's employee, Blue, was a fellow servant or a vice-principal.

Both Rawlins and Blue testified that, when Rawlins drove into the feed lot on the morning of the accident, Blue told Rawlins to take the south route and stay close to the bank. Respondent takes the view that this was but the suggestion of a fellow servant, and if it constituted negligence, it would not be imputable to the employer. Appellant takes the position that this was an order or direction from a vice-principal, and that, if it constituted negligence, the employer would therefore be liable. In furtherance of his theory, respondent proposed an instruction which would have advised the jury, as a matter of law, that Blue was a fellow servant, and that Nelson would not be liable for Blue's negligence. The trial court refused to give this instruction.

■ While the testimony was in conflict, there was substantial evidence supporting appellant's contention that Blue had been given the duty of instructing and directing other employees on the farm relative to the farm activities, including the equipment to be used and the route to be followed in carting hay to the feed rack. Such testimony, if believed by the jury, would have established the relationship of vice-principalship between Blue and his employer, Nelson. *Barney v. Anderson*, 116 Wash. 352, 199 Pac. 452;

*Carlson v. P. F. Collier & Son Corp.*, 190 Wash. 301, 67 P. (2d) 842. Where there is conflicting testimony as to whether or not an employee is a vice-principal, the question is one for the jury. *Jasper v. Bunker Hill & Sullivan Min. & Con. Co.*, 50 Wash. 570, 97 Pac. 743; *Marks v. Hurley Mason Co.*, 73 Wash. 437, 131 Pac. 1122. The court was therefore correct in rejecting the proposed instruction which would have removed this question from the jury.

When the trial court indicated that it would leave to the jury the question of Blue's status as a fellow servant or vice-principal, respondent proposed an instruction defining the vice-principal relationship. This instruction was offered as a proper and complete statement of the law on the subject. On appeal, however, respondent argues only that it should have been given in addition to the trial court's comprehensive instruction No. 17 on the subject. The proposed instruction reads as follows:

"You are instructed that one of the questions for you to decide is whether the witness Ernest Blue was a vice-principal or fellow servant. Whether the relation be that of vice-principal or fellow servant depends upon the character of the service being performed at the time. If the character of the work was such that general oversight could be dispensed with without depriving the injured servant of a substantial right, then the fellow servant relation would exist. There is no legal obligation on the part of the master to furnish superintendence because two or more men are engaged in a common task.

"When men are assisting one another in a common task, the mere fact that one took the lead in directing the work because of age, experience, or common consent would not change the relation of fellow servant and make the one so directing a vice-principal."

We assume, for present purposes, that the proposed instruction is proper in form. Much of it is taken verbatim from the opinion in *Jones v. Baker*, 179 Wash. 25, 30, 35 P. (2d) 1103. We also assume that the instruction actually given was correct in so far as it went, there being no exception or assignment of error to the contrary. The only question before us is whether the proposed instruction adds anything which it was prejudicial for the court to omit.

█ It seems to us that the general thought expressed in the proposed instruction is incorporated in the one actually given. They both convey the idea that, in order for the vice-principal relationship to exist, there must be a delegation of the employer's duties and obligations to someone who is placed in charge of other employees. They both make it clear that the relationship is not established by a mere showing that one employee gave directions to another employee.

The proposed instruction contains the additional caution, not to be found in the court's instruction, that there is no legal obligation on the part of the master to furnish superintendence because two or more men are engaged in a common task. While it would have been proper to include this qualification, we do not believe that its omission was prejudicial. An almost endless number of perfectly proper qualifications, conditions and refinements to and of the concept of vice-principalship can be gleaned from the decisions on the subject. The trial court must be allowed some discretion in determining which of these are pertinent and important, and will assist rather than confuse the jury.

In our opinion, the trial court did not err in denying the motion for a new trial because of the failure to give the proposed instructions referred to above.

The judgment is reversed and the cause remanded with directions to enter judgment for appellant in accordance with the verdict of the jury.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and GRADY, JJ., concur.

June 22, 1951. Petition for rehearing denied.